**James R. MEEK, Appellant,**

v.

**UNOCAL CORPORATION (Self–Insured) and The Alaska Workers' Compensation Board, Appellees.**

No. S–6462.

Supreme Court of Alaska.

April 26, 1996.

---

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

Constance E. Livsey and Suzanne K. Ishii–Regan, Faulkner, Banfield, Doogan & Holmes, Anchorage, for Appellees.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

COMPTON, Justice.

## I. *INTRODUCTION*

The issues in this workers' compensation case are whether Meek may claim permanent total disability benefits after requesting reemployment benefits, and whether the statute and regulation defining remunerative employability are constitutional. The Alaska Workers' Compensation Board held that Meek was not entitled to permanent total disability benefits, but declined to address the constitutional issues. On appeal, the superior court affirmed the benefits decision, and held that the statute and regulation are constitutional. We affirm the superior court's decision regarding the constitutionality of the statute and regulation, but reverse its decision regarding benefits.

## II. *FACTS AND PROCEEDINGS*

James Meek was injured in January, 1991 in the course of his employment with Unocal. At the time of his injury, Meek worked seven days on, seven days off. He was compensated at a rate of $23 per hour, but also received significant overtime pay due to his unusual hours.

As a result of his injury, Meek collected temporary total disability (TTD) benefits under Alaska's Workers' Compensation Act (Act). AS 23.30.005–.270. After a brief return to light-duty work, Meek intermittently collected TTD and temporary partial disability (TPD) benefits. He was declared medical-

ly stable in February, 1992, and thereafter collected permanent partial impairment (PPI) benefits.

Meek requested and was deemed eligible for reemployment benefits under AS 23.30.041. That statute provides for the development of a reemployment plan, at employer expense, to return injured persons to the work place. AS 23.30.041. When Meek's PPI benefits were exhausted, Unocal began paying him subsection .041(k) interim wages. *See* AS 23.30.041(k). The reemployment plan eventually developed called for Meek to be retrained as an electronics technician. Unocal agreed to the plan's provisions, but Meek did not. The rehabilitation benefits administrator (RBA) approved the plan.

At a hearing before the Workers' Compensation Board (Board), Meek sought review of the RBA's approval of the reemployment plan, arguing that he was unable to perform the physical tasks required of an electronics technician, and that he could not achieve the remunerative wage the reemployment plan forecast. Meek also claimed he was eligible for permanent total disability benefits (PTD) from the time his PPI benefits were exhausted until a reemployment plan was in place, and, accordingly, that subsection .041(k) interim wages were not an appropriate substitute. Finally, Meek challenged the constitutionality of the statute and regulation used to calculate his remunerative employability wage rate.

The Board remanded the reemployment plan to the RBA to determine whether Meek could perform the physical tasks required of an electronics technician. The Board also directed the RBA to make findings of fact about the viability of Meek's forecasted remunerative employability rate of $13.98 an hour upon completion of the plan. The Board denied Meek's request for PTD benefits, concluding it would be "incongruous" to hold that an "employee, for whom a reemployment plan is being devised, is, at the same time, an employee who is permanently and totally disabled." *Meek v. Unocal,* AWCB No. 9101334 (June 18, 1993) (quoting *Bell v. Dalton Electric, Inc.,* AWCB No. 92–0287 (Nov. 23, 1992). The Board declined to address Meek's constitutional arguments.

Meek appealed to the superior court,· *see* Alaska Appellate Rules 601–611, which affirmed the Board's denial of Meek's PTD benefits· claim. The superior court considered and rejected Meek's constitutional challenges. Meek appeals.

### III. DISCUSSION

#### A. Standard of Review

We review the Board's denial of Meek's PTD benefits claim under the independent judgment standard, making our own interpretation of the statutes involved. *Rydwell v. Anchorage School Dist.,* 864 P.2d 526, 528 (Alaska 1993). We review Meek's constitutional challenges *de novo,* adopting the " 'rule of law that is most persuasive in light of precedent, reason, and policy.' " *Municipality of Anchorage v. Leigh,* 823 P.2d 1241, 1243 n. 5 (Alaska 1992) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)). Because the superior court acted as an intermediate court of appeal, we give no deference to its decision. *Rydwell,* 864 P.2d at 528.

#### B. The PTD Benefits Claim
##### 1. A claim for PTD benefits is not incompatible with a request for reemployment benefits.

Unocal argues, in line with the Board's holding, that Meek cannot claim PTD benefits after requesting reemployment benefits. Nothing in the Act, however, implies that an employee must be less than permanently and totally disabled to be eligible for reemployment benefits, nor is it "incongruous" for an employee who has requested reemployment benefits to claim PTD benefits.

The Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." AS 23.30.265(10). We have held that "total" disability means "the inability because of injuries to perform services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist." *J.B. Warrack Co. v. Roan,* 418 P.2d 986, 988 (Alaska 1966). Under the "odd-lot" doctrine, which

we have adopted, " 'total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market.' " *Olson v. AIC/Martin J.V.,* 818 P.2d 669, 674 (Alaska 1991) (quoting 2 Arthur Larson, *Workmen's Compensation,* § 57.51, p. 10–53 (Desk Ed.1990)).

The concept of total disability includes an education component. *See Roan, supra; Vetter v. Alaska Workmen's Compensation Bd.,* 524 P.2d 264, 266 (Alaska 1974) ("Factors to be considered in making [a finding that a person's earning capacity was decreased due to a work-related injury] include. not only the extent of the injury, but also age, education, employment available in the area for persons with the capabilities in question, and intentions as to employment in the future."). Thus, a person's lack of education, as much as his physical injury, may be the "handicap" preventing him from obtaining all but "odd-lot" jobs. *See generally* 1C Arthur Larson, *Workmen's Compensation Law* § 57.51(d), p. 10–336 (1994) ("A considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury was constricted by lack of mental capacity or education.").

If a lack of education can be overcome through vocational rehabilitation, then a disability that was once "total" may no longer be so. This is precisely what section .041 aims to do; its goal is to retrain and educate permanently impaired employees[1] so that they can attain "remunerative employability."[2] *Id.* "Reemployment benefits" available under section .041 include on-the-job training, vocational training, academic training, and self-employment. AS 23.30.041(i).

Through the rehabilitation process established by section .041, a person suffering from a "total" disability can gain the skills and education necessary to allow him or her to reenter the job market and attain "remunerative employability." As this analysis makes clear, a claim for PTD benefits is not incompatible with a request for reemployment benefits. The Board therefore erred in holding that Meek could not claim PTD benefits after requesting reemployment benefits.[3]

### 2. *The presumption of compensability applies to Meek's claim.*

■ AS 23.30.120(a)(1)[4] establishes a presumption of compensability which places the burden of producing evidence on the employer. *Sokolowski v. Golden Lion Hotel,* 813 P.2d 286, 292 (Alaska 1991). Unocal argues that AS 23.30.120(a)(1) only creates a presumption that an injury is work-related, and does not apply to an employee's claim that his or her disability "fits within a particular category, such as PTD." However, "[i]t is well established that the presumption [of compensability] goes far beyond the issue of whether an injury is work-related." *Cluff v. Nana–Marriott,* 892 P.2d 164, 170 n. 5 (Alaska 1995). We have held that "the text of AS 23.30.120(a)(1) indicates that the presumption of compensability is applicable to *any* claim for compensation under the workers' compensation statute." *Municipality of Anchorage v. Carter,* 818 P.2d 661, 665 (Alaska 1991) (emphasis added). In *Wien Air Alaska v. Kramer,* 807 P.2d 471, 474 (Alaska 1991), we applied the presumption of compensability to a temporary total disability claim. We now hold that the "pro-worker" presumption in

---

1. An employee is not eligible for reemployment benefits if, *inter alia,* "at the time of medical stability no permanent impairment is identified or expected." AS 23.30.041(f)(3).

2. " '[R]emunerative employability' means having the skills that allow a worker to be compensated with wages or other earnings equivalent to at least 60 percent of the worker's gross hourly wages at the time of injury...." AS 23.30.041(p)(7).

3. Subsection .041(k) interim wages may not be paid while an employee is receiving PTD benefits

since subsection .041(k) interim wages are only payable upon the exhaustion of the employee's permanent impairment benefits. AS 23.30.041(k).

4. AS 23.30.120(a)(1) provides:

In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary that (1) the claim comes within the provisions of this chapter....

AS 23.30.120(a)(1), *Nana–Marriott*, 892 P.2d at 170, also applies to PTD claims.[5]

On remand, the Board should apply the presumption of compensability to Meek's claim. Unocal may rebut the presumption with substantial evidence that Meek is not permanently totally disabled.[6] *See Olson*, 818 P.2d at 672. If Unocal produces such substantial evidence, the presumption will "drop out," and Meek will then have the burden of proving all elements of his PTD claim.[7] *Burgess Const. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981).

### 3. *Meek may receive PTD benefits while participating in the reemployment plan.*

█ Unocal argues that once Meek agreed to participate in a reemployment plan, he was limited to receiving interim wages under AS 23.30.041(k). That provision speaks only to the employer's obligations when an employee's PPI benefits are exhausted, and does not limit an employee's benefits exclusively to subsection .041(k) interim wages. *See* AS 23.30.041(k) ("If the employee's permanent impairment benefits are exhausted before the completion or termination of the reemployment plan, the employer shall provide wages equal to 60 percent of the employee's spendable weekly wages but not to

exceed $525, until the completion or termination of the plan."). Subsection .041(k) contemplates the payment of other types of benefits during the pendency of a plan. *See Id.* (providing that an employee receiving TTD benefits before completion of a reemployment plan is entitled to PPI benefits once he or she reaches medical stability). Unocal's argument that Meek is limited to subsection .041(k) interim wages is without merit.

### C. *The Constitutional Challenges*

Meek argues AS 23.30.041(p)(7) and 8 AAC 45.490, the statute and regulation defining "remunerative employability" and "gross hourly wages," violate the equal protection clause [8] and due process clause [9] of the Alaska constitution.

AS 23.30.041(p)(7) defines "remunerative employability" to mean wages equivalent to "at least 60% of the worker's gross hourly wages at the time of injury." According to Board regulation, "gross hourly wages" is determined in accordance with 8 AAC 45.490, which reads:

(1) If the employee was paid on an hourly basis at the time of injury, gross hourly wages are the actual hourly wage at the time of injury, exclusive of premium time or overtime.

---

5. AS 23.30.180, which governs PTD benefits, does not require that PTD benefits be excluded from the presumption. Rather, the statute specifies that, except for certain predetermined disabilities which automatically constitute permanent total disability, permanent total disability "is determined in accordance with the facts." AS 23.30.180(a). This language does not exempt PTD benefits from the presumption of compensability.

Unocal argues that there is a presumption against permanent total disability, but the cases it cites do not support this proposition. Rather, they hold that once an employee establishes a claim of disability, the employee retains the presumption of continuing disability, unless and until the employer introduces substantial evidence to the contrary. This does not mean that the employee presumptively remains in one category of disability until substantial evidence is introduced to place the employee in another category. *See Olson v. AIC/Martin J.V.*, 818 P.2d 669, 672 (Alaska 1991) ("[W]e hold that an employee [who has received TTD benefits] presumptively remains temporarily totally disabled unless and until the employer introduces 'substantial evi-

dence' to the contrary."); *Municipality of Anchorage v. Carter*, 818 P.2d 661, 665 n. 10 (Alaska 1991) (same); *Bailey v. Litwin Corp.*, 713 P.2d 249, 254 (Alaska 1986) (Presumption of compensability applies to a claim of temporary total disability.).

6. Unocal argues that it has presented substantial evidence that Meek is not permanently totally disabled. We prefer to allow the Board to make the initial determination as to whether Unocal has satisfied its burden.

7. In this context it is worth noting that a failure to achieve remunerative employability does not, by itself, constitute permanent total disability. AS 23.30.180(b).

8. "[A]ll persons are equal and entitled to equal rights, opportunities, and protection under the law." Alaska Const. art. I, § 1.

9. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

(2) If the employee was paid on a weekly or monthly salary basis at the time of the injury

   (A) The weekly salary must be multiplied by 52 and divided by 2080 to compute gross hourly wages; or

   (B) the monthly salary must be multiplied by 12 and divided by 2080 to compute gross hourly wages.

(3) If at the time of injury the employee received bonuses, commissions, gratuities, or room and board during the course of employment, gross hourly wages are computed by dividing the gross weekly earnings, as determined under AS 23.30.220, by 40.

To determine Meek's gross hourly wages, the RBA applied 8 AAC 45.490(1), and found that Meek's remunerative employability wage was $13.98, or 60% of his actual hourly wage of $23 per hour.

■ Meek's equal protection challenge is based on his claim that North Slope workers have their remunerative wage calculated under 8 AAC 45.490(3), and that this difference in methodology "arbitrarily distinguish[es] between similarly situated workers." We agree with the superior court that "Meek's work situation was not at all the same as that of a remote site worker who receives room and board; Meek lived near his work place and did *not* receive room and board." *Meek v. Unocal Corp.*, 3AN–93–6216, Decision at 10 (June 10, 1994). Because Meek was *not* similarly situated to North Slope workers, his equal protection argument must fail. *See Coghill v. Coghill*, 836 P.2d 921, 929 (Alaska 1992) ("[E]qual protection has never required that differently situated persons be treated in the same way.").

■ Meek argues that AS 23.30.041(p)(7) and 8 AAC 45.490 violate due process because they bear no reasonable relationship to any legitimate governmental purpose. *See Municipality of Anchorage v. Leigh*, 823 P.2d 1241, 1244 (Alaska 1992) ("Substantive due process is denied when a legislative provision bears no rational relationship to a legitimate government interest."). The party asserting a due process claim bears the heavy burden of demonstrating that no rational basis exists, and "if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification." *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

The purpose of the Alaska Workers' Compensation Act is to "ensure the quick, efficient, fair and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to employers." § 1, ch. 79, SLA 1988. Classifying a worker's gross hourly wages based on the type of compensation received is entirely consistent with this purpose. The reason North Slope workers have their remunerative wage calculated under 8 AAC 45.490(3) is that they, unlike Meek, receive room and board as part of their compensation; hence, in order to fully compensate Slope workers, different treatment is required. The challenged statute and regulation legitimately and rationally distinguish between those employees who receive certain types of benefits or non-wage compensation and those who do not. Meek's due process argument is without merit.

## IV. CONCLUSION

The Board's decision denying Meek's PTD benefits claim, and the superior court's affirmance of that decision, are REVERSED. The superior court's decision rejecting Meek's constitutional arguments is AFFIRMED. This case is REMANDED to the Board for proceedings consistent with this opinion.