Jeanne Carroll **CARLSON,** Appellant,

v.

**DOYON UNIVERSAL–OGDEN SER-VICES and Alaska National Insur-ance Company,** Appellees.

No. S–8888.

Supreme Court of Alaska.

Jan. 21, 2000.

Chancy Croft, Chancy Croft Law Office, Anchorage, for Appellant.

Theresa Hennemann and Robert Bredesen, Holmes, Weddle & Barcott, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Jeanne Carroll Carlson appeals the Alaska Workers' Compensation Board's denial of her

Permanent Total Disability (PTD) claim. Carlson maintains that the Board failed to consider factors that she believes made it impossible for her to find suitable work. Because we conclude the Board did not err in deciding that Carlson's employer has shown that regularly and continuously available work is available in an area suited to Carlson's capabilities, we affirm.

## II. FACTS AND PROCEEDINGS

Jeanne Carol Carlson suffered a back injury in December 1995 while working as a housekeeper at the Doyon Universal–Ogden Services (Doyon) facility on the North Slope. Several doctors have diagnosed her as having injured the discs in her lower back. She sought chiropractic care from Dr. David Mulholland and participated in other rehabilitation programs. After a few months of treatment during which she received Temporary Total Disability (TTD) payments, Carlson applied to the Reemployment Board seeking reemployment benefits [1] on June 7, 1996.

At the request of Alaska National Insurance, the workers' compensation insurance carrier for Doyon, Dr. Shawn Hadley examined Carlson and determined that her situation had stabilized, which made her ineligible for TTD benefits.[2] Dr. Hadley also cleared her for light duty work.

After this report, Alaska National requested that Carlson undergo an eligibility evaluation. Dr. Mulholland conducted this examination, finding that her condition had not stabilized. To resolve a conflict in the reports of Dr. Mulholland and Dr. Hadley, Carlson requested a secondary independent medical evaluation. The Board granted it in January 1997.

While awaiting the evaluation and the Reemployment Benefits Administrator's (RBA) recommendation, Carlson took other steps to obtain benefits. Carlson applied for an adjustment of her claim, asking the Alaska Workers' Compensation Board for TTD benefits as of September 1996. In December 1996 the RBA's evaluator recommended her

for reemployment benefits. But before the RBA awarded benefits, it suspended the process pending the outcome of the Board-ordered secondary independent medical evaluation.

Dr. Douglas Smith performed the independent evaluation. His report found that Carlson's condition had stabilized, and he cleared her for light duty work. Carlson's stable condition made her ineligible for TTD benefits, so she modified her claim again, asking for PTD benefits in March 1997. After an October 1997 hearing, the Board denied Carlson PTD status.

All three doctors, including her treating chiropractor, believe that Carlson sustained a work-related injury but nevertheless is capable of doing either sedentary or light-duty work. All three also maintain that she is not permanently disabled.

In addition to the medical evidence, the Board heard the testimony of Carlson and two rehabilitation experts. Jill Friedman testified on Carlson's behalf. She concluded that available jobs within Carlson's physical capacity required skills that Carlson either did not have or could not learn. She described Carlson's employment prospects as "very poor."

Doyon's rehabilitation expert, Carol Jacobsen, disagreed with Friedman about Carlson's prospects for procuring full-time employment. Jacobsen investigated several occupations that Dr. Hadley had identified as within Carlson's physical capacities, including receptionist and cashier. Jacobsen testified that Carlson either had held similar jobs in the past or could learn the necessary skills with training. Jacobsen also surveyed the Anchorage job market and concluded there were job openings for Carlson given her physical limitations. The Board ruled that the employer had shown that regular, continuous work was available in the area, supporting a finding that Carlson was not PTD.

After the Board denied Carlson PTD status, the RBA declared her eligible for reha-

---

1. These benefits are also called rehabilitation benefits.

2. When an employee's condition stabilizes, she becomes ineligible for TTD benefits. *See* AS 23.30.185.

bilitation benefits as of December 11, 1997. Alaska National eventually paid benefits in accordance with the RBA's decision. Carlson appealed the Board's decision to the superior court, and Judge Sigurd E. Murphy affirmed the Board's decision.

In this appeal Carlson claims that the Board erred when it denied her PTD benefits for the time between September 21, 1996, when her Permanent Partial Impairment (PPI) benefits expired, and December 11, 1997, when she received reemployment benefits.

## III. *STANDARD OF REVIEW*

 An individual's status as permanently, totally disabled is a question of fact.[3] And when we review the Board's determination of a factual question, we apply the substantial evidence test.[4] Substantial evidence is

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Board's decision need not be the only possible solution to the problem, for it is not the function of the court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.[5]

When reviewing the Board's decision, we give no deference to the superior court's decision.[6]

## IV. *DISCUSSION*

 Alaska's Workers' Compensation Act presumes that an employee's claim is compensable.[7] We apply this presumption in a three-step process.[8] For the presumption to attach, the employee first must establish a preliminary link between her disability and her employment.[9] After the employee demonstrates the link, the employer may rebut the presumption with substantial evidence that the employee is not PTD.[10] If the employer shows substantial evidence, then the presumption disappears and the employee must prove her PTD claim by a preponderance of the evidence.[11] When reviewing the Board's decision whether an employee has established her claim by a preponderance of the evidence, we determine whether substantial evidence supports the Board's findings.[12]

### A. *Carlson Established a Preliminary Link Sufficient to Raise the Presumption of Compensability.*

 The Board erred when it failed to apply the statutory presumption that work-related injuries are compensable. To implicate the presumption, an employee must simply demonstrate some evidence that her employment contributed to the disability.[13] A mere showing that the injury occurred at work will often suffice to establish the presumption.[14]

Because Carlson suffered a work-related injury and produced evidence that she was unemployable, Carlson implicated the presumption by establishing the preliminary link between her disability and her employment.[15] But every doctor who has examined her, including her own treating doctor, agrees that she is not PTD and has cleared her for

---

3. *See* AS 23.30.180(a) ("permanent total disability is determined in accordance with the facts").

4. *See Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

5. *Thompson v. United Parcel Serv.,* 975 P.2d 684, 688 (Alaska 1999) (quoting *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974)).

6. *See National Bank of Alaska v. State, Dep't of Revenue,* 642 P.2d 811, 816 (Alaska 1982).

7. *See* AS 23.30.120(a)(1).

8. *See Stephens v. ITT/Felec Servs.,* 915 P.2d 620, 624 (Alaska 1996).

9. *See id.*

10. *See Meek v. Unocal Corp.,* 914 P.2d 1276, 1280 (Alaska 1996).

11. *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985).

12. *See Stephens,* 915 P.2d at 624.

13. *See Fox v. Alascom, Inc.,* 718 P.2d 977, 984 (Alaska 1986).

14. *See Resler v. Universal Servs., Inc.,* 778 P.2d 1146, 1148 (Alaska 1989).

15. *See Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 316 (Alaska 1981).

some combination of light duty and sedentary work. Both the Board and the superior court relied on medical evidence to find that Carlson had not met the minimal burden necessary to raise the presumption.

The policy behind the preliminary link requirement, however, favors a finding that the presumption attached. "The purpose of the preliminary link requirement is to rule out cases in which the claimant can show neither that the injury occurred in the course of employment nor that it arose out of it."[16] This case does not raise that concern. The parties do not dispute that Carlson suffered a back injury at work. Evidence of her injury and testimony that she was unemployable sufficed to demonstrate the preliminary link.[17]

In a case involving a similar injury, we held that the employee's testimony and a doctor's testimony verifying her injury sufficed to justify the Board's implication of the presumption.[18] Similarly here, Carlson demonstrated that she suffered an injury at work, and rehabilitation expert Jill Friedman testified that Carlson's chances of returning to full employment were very poor. These facts justify applying the presumption of compensability.[19]

■ Doyon's argument that Carlson failed to demonstrate medical evidence that she is PTD oversimplifies the concept of "total disability." Alaska has adopted the odd lot doctrine in defining what constitutes PTD.[20] The odd lot doctrine states that "total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market."[21] Under this formulation of total disability, Friedman's testimony demonstrates evidence of disability despite the overwhelming medical evidence that Carlson can perform light duty work.

Friedman testified that Carlson's chance of finding employment was low given her physical limitations, skills, education, and age. Thus, Friedman considered more than medical fitness in forming her opinion. The Board also should have considered factors such as Carlson's skills, education, and age in determining whether the presumption attached.[22] Dismissing this evidence prior to deciding whether the presumption attaches is inappropriate, because the Board should not weigh the credibility of the witnesses at this stage.[23] In this case Carlson presented sufficient evidence to demonstrate that she suffered a work-related injury which raised the presumption of compensability.

Although the Board erred in finding that the presumption did not attach, it undertook an alternative analysis based on the assumption that the presumption had attached. Because we conclude that this alternative analysis is correct, we hold that the Board's error was harmless.

B. *Alaska National Presented Substantial Evidence that Carlson Was Not PTD.*

■ When the presumption of compensability applies, the burden shifts to the employer to produce substantial evidence that the employee is not PTD. In determining whether the employer presented substantial evidence, we must find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] We look to the employer's evidence standing alone without reweighing it.[25] The evidence must, however, be comprehensive and reli-

16. *Resler*, 778 P.2d at 1148 (internal punctuation omitted).

17. *See id.* at 1149 (ruling that a housekeeper injured while changing beds at a facility on the North Slope—precisely the injury sustained by Carlson—had established the preliminary link).

18. *See Resler*, 778 P.2d at 1148–49.

19. *See id.*

20. *See Meek*, 914 P.2d at 1279.

21. *Olson*, 818 P.2d at 674 (quoting 2 Arthur Larson, *Workers' Compensation* § 57.51, at 10–53 (Desk Ed.1990)).

22. *See Meek*, 914 P.2d at 1279.

23. *See Resler*, 778 P.2d at 1148–49.

24. *Thompson*, 975 P.2d at 688.

25. *See Gillispie*, 881 P.2d at 1109.

able, and account for relevant factors defining disability.[26]

 Although the Board found that Carlson failed to establish the preliminary link requirement, it nevertheless considered whether Doyon presented substantial evidence to overcome the presumption. We agree with the Board's conclusion that Doyon presented substantial evidence.

To avoid paying PTD benefits, an employer must show that "there is regularly and continuously available work in the area suited to the [employee's] capabilities, i.e., that [she] is not an 'odd lot' worker."[27] The Board concluded that the three doctors' unanimous view that Carlson was not PTD and Jacobsen's testimony identifying continuous and suitable work sufficed to overcome the presumption. This evidence satisfies the "comprehensive and reliable" requirement propounded in *Stephens*.[28] The Board considered Carlson's medical limitations and her competitiveness in the job market, specifically referring to the testimony of rehabilitation expert Jacobsen and her Anchorage area labor market survey.

Because Doyon produced substantial evidence that Carlson is not PTD, we conclude that Doyon has overcome the presumption of compensability.

### C. *Carlson Did Not Prove Her PTD Claim by a Preponderance of the Evidence.*

 The last question in our three-step analysis is whether Carlson proved her PTD claim by a preponderance of the evidence.[29] At this stage the Board may weigh the evidence.[30] The Board emphasized that no doctor, not even her treating chiropractor, ever concluded that Carlson was PTD. Moreover, every doctor testifying in the case cleared her for light duty or sedentary work. The Board also relied on rehabilitation specialist Jacobsen's finding that a regular, stable labor market existed for people with Carlson's skills and capabilities. The Board decided that Jacobsen's testimony was sufficient to support its finding that Carlson was not PTD.

We have upheld a denial of disability status based on the testimony of rehabilitation counselors.[31] Much like Jacobsen in this case, the expert in *Summerville v. Denali Center*[32] based his testimony on his review of the employee's claim file and a labor market survey. He identified job classifications suitable to the employee given her physical and educational limitations. Based on this information, he concluded that suitable employment was available. We acknowledged that the record contained evidence that regular and continuous employment was not available to the employee, but decided it was the Board's role to weigh such evidence.[33] We similarly defer to the Board's evaluation of the evidence in this case.

 Carlson points to the testimony of Jill Friedman to support her argument that she established her PTD status by a preponderance of the evidence. But the Board may weigh differences in expert testimony and decide in favor of one side.[34] In *Harp v. ARCO Alaska, Inc.*,[35] the medical records and testimony favored a finding that the

---

26. *See Stephens*, 915 P.2d at 625.

27. *Sulkosky v. Morrison–Knudsen*, 919 P.2d 158, 167 (Alaska 1996) (internal quotations omitted). Carlson has attempted to distinguish *Sulkosky*. It is true that the employee in *Sulkosky* appealed a Board decision revoking the previous grant of PTD status, distinguishing that case factually. Nevertheless, *Sulkosky* addresses the broader question of the standards for finding someone PTD. *See id.* at 166–67. Carlson has sought PTD benefits in this proceeding, making *Sulkosky* quite relevant.

28. 915 P.2d at 625.

29. *See id.* at 624.

30. *See id.* at 627.

31. *See Summerville v. Denali Center*, 811 P.2d 1047, 1051 (Alaska 1991).

32. *Id.*

33. *See id.* at 1051 (citing *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1049 (Alaska 1978)).

34. *See Harp v. ARCO Alaska, Inc.*, 831 P.2d 352, 357 (Alaska 1992).

35. 831 P.2d 352.

employee was disabled.[36] But one expert testifying for the employer vehemently disagreed. Nevertheless, we upheld the Board's conclusion that the employee was disabled, holding that substantial evidence existed to support the finding.[37] The present case is analogous. The litigants have presented conflicting experts, but we defer to the Board's resolution of their conflicting testimony.

### D. *The Board's Findings Were Sufficient.*

■ Although Carlson has objected to the adequacy of the Board's findings, we hold that they suffice to facilitate meaningful judicial review. Relying on our decision in *Stephens*,[38] Carlson argues that "the Board failed to recognize, address[,] or resolve much conflicting testimony." But the circumstances in *Stephens*, in which we reversed a Board decision for insufficient findings, are not present in this case. In *Stephens*, the Board did not resolve a material dispute about work conditions, failing to discuss the issue or "even acknowledge" the testimony of Stephens's witnesses.[39] The Board in *Stephens* never mentioned how it resolved the work conditions dispute, simply siding with the employer's medical experts.[40]

The findings in this case, although terse, provide more guidance than those in *Stephens*. The Board addressed the critical issue in the case—the availability of regular and continuous work—and acknowledged the testimony of Carlson's expert, Jill Friedman. But "based on the opinions of Carol Jacobsen," the Board found "that the employer has shown regular and continuous work in our area suited to the employee's light sedentary capabilities." Because the Board addressed the relevant issues and because the law grants the Board broad discretion in resolving conflicting expert testimony, we hold that the findings were adequate.

### E. *Carlson Is Not Entitled to PTD Benefits.*

Because we uphold the Board's conclusion that Carlson failed to prove her PTD claim, we hold that she is not entitled to compensation for the period after her PPI benefits expired and before her rehabilitation benefits began. Carlson argues that she should be permitted to pursue her rehabilitation claim concurrently with her PTD claim. Although we have observed that "a claim for PTD benefits is not incompatible with a request for reemployment benefits,"[41] Carlson must still prove her claim by a preponderance of the evidence in order to receive PTD benefits.[42] This she has failed to do, and nothing in *Meek* relieves her of her burden of proof.[43]

■ Carlson makes a valid point about a potential "gap" in benefits for the period between the expiration of PPI and the initiation of rehabilitation benefits. We do not believe, however, that the circumstances of this case justify a retroactive award of rehabilitation benefits for the time that Carlson received no compensation. Because the legislature intended the rehabilitation process to be voluntary,[44] the onus was on Carlson to pursue rehabilitation vigorously.

Although the RBA suspended consideration of her application pending the outcome of the secondary independent medical evaluation that Carlson requested, the record before us does not indicate that Carlson made any attempt to reinitiate processing of her rehabilitation benefits application after the secondary evaluation.[45] Instead, she chose

**36.** *See id.* at 357.

**37.** *See id.*

**38.** 915 P.2d at 627.

**39.** *Id.*

**40.** *Id.* at 627 n. 8.

**41.** *Meek*, 914 P.2d at 1279.

**42.** *See Veco v. Wolfer*, 693 P.2d 865, 870 (Alaska 1985).

**43.** 914 P.2d at 1278–80.

**44.** *See* Joint House & Senate Labor & Commerce Committee, Jan. 19, 1988, Tape 1, side 2, tab 586. Further evidence of this intent can be found in AS 23.30.041(g).

**45.** If Carlson had presented evidence that she repeatedly attempted to reinitiate the rehabilitation process while she pursued PTD benefits or that her employer had used tactics which delayed the award of rehabilitation benefits, then an award of benefits retroactively might be appropriate.

to emphasize her pursuit of PTD benefits. Because she did not actively pursue her rehabilitation benefits during the period she sought PTD benefits, however, no retroactive award of rehabilitation benefits is warranted in this case.

## V. CONCLUSION

The Board erred when it ruled that Carlson had failed to raise the presumption of compensability. This error, however, was harmless. The Board and the superior court correctly determined that, even if the presumption had been raised, the employer presented substantial evidence to rebut the presumption. The Board and the superior court also correctly concluded that Carlson failed to prove her case by a preponderance of the evidence. Because Carlson failed to demonstrate she was PTD and did not reinitiate the rehabilitation process until after the Board denied PTD benefits, she is not entitled to benefits for the time between her PPI expiration and the commencing of her rehabilitation benefits. We therefore AFFIRM the Board's decision.