Mark LEIGH, Appellant,

v.

SEEKINS FORD and Liberty Northwest
Insurance Company, Appellees.

No. S–11270.

Supreme Court of Alaska.

May 12, 2006.

James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellant.

Constance E. Livsey, Holmes Weddle & Barcott, PC, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

# I.  INTRODUCTION

After injuring his back while employed by Seekins Ford, Mark Leigh unsuccessfully claimed permanent total disability (PTD) benefits under the Alaska Workers' Compensation Act. He argues on appeal that Seekins Ford did not rebut the presumption of compensability that, he claims, arose from evidence that debilitating pain and pain medication kept him from working and rendered futile efforts to find suitable employment. We conclude that the Alaska Workers' Compensation Board did not make sufficient findings addressing Leigh's evidence that he was incapacitated by pain and pain medication. We therefore vacate the superior court decision that affirmed the board's denial of PTD benefits and remand for further proceedings.

# II.  FACTS AND PROCEEDINGS

Mark Leigh worked at Seekins Ford in Fairbanks from 1976 until February 1995, when he injured his back while working as a service mechanic. After two back surgeries, Leigh returned to Seekins Ford in a supervisory capacity. In August 1996 Leigh underwent a third back surgery and has not returned to work. He moved to and currently resides in Snowflake, Arizona, where he had his fourth and most recent back surgery in March 1998. In March 1999 a panel of doctors conducted an independent medical examination and concluded that Leigh could work and attend classes with some restrictions.

Leigh applied to the Alaska Workers' Compensation Board for permanent total disability (PTD) benefits in May 1999. At the board hearing, Leigh presented evidence that he has restricted motion in his back and suffers from depression, and offered rehabilitation therapist Robert Sullivan's report that Leigh cannot return to work due to the effects of necessary narcotic pain medications. Numerous friends, family members, and co-workers also testified about Leigh's pain and inability to work. Seekins Ford offered contrary medical evidence; it also offered testimony from rehabilitation counselor Betty Cross that suitable work was available to Leigh.

The board found that Leigh had triggered the presumption of compensability. It then found that Seekins Ford had rebutted the presumption by producing evidence "that

[Leigh] has the physical and mental abilities to perform 'regularly and continuously available' work that is available in the area." Finally, it concluded that Leigh failed to prove his PTD status by a preponderance of the evidence. It therefore denied his claim for PTD benefits.

The superior court affirmed. Focusing on the medical evidence that persuaded the board that Leigh had the physical and mental capacity to work, the superior court held that Seekins Ford presented sufficient evidence to rebut the presumption of compensability. The superior court upheld the board's determination that Leigh did not prove his claim by a preponderance of the evidence and held that Seekins Ford's evidence of a "regular, stable market" for jobs suiting Leigh's abilities was sufficient.

Leigh appeals.

## III. DISCUSSION

### A. Standard of Review

■ In appeals from the board, we apply the "substantial evidence" standard of review for questions of fact.[1] Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Whether the amount of evidence is substantial is a question of law.[3] We apply the "reasonable basis" standard of review for questions of law involving agency expertise, but apply the "substitution of judgment" standard of review for questions of law outside the agency's expertise.[4] Whether the board made suffi-

cient findings is a question of law that we review de novo.[5]

### B. The Board Procedurally Erred in Reaching Its Conclusion that Leigh Was Not Permanently and Totally Disabled.

■ Alaska Statute 23.30.120(a)(1) establishes a presumption for workers' compensation purposes that injuries are compensable.[6] "For the presumption to attach, the employee first must establish a preliminary link between the disability and the employment. After the employee demonstrates the link, the employer may rebut the presumption with substantial evidence that the employee is not PTD."[7] To rebut the presumption of compensability, "an employer must show that there is regular and continuously available work in the area suited to the employee's capabilities, i.e., that [he or she] is not an odd lot worker."[8] If the employer presents substantial evidence that the employee is not PTD, the "presumption disappears and the employee must prove [his or her] PTD claim by a preponderance of the evidence."[9]

The parties agree that Leigh was injured on the job and that the presumption of compensability attaches. Leigh advances two reasons for his contention that Seekins Ford failed to adduce substantial evidence to rebut the presumption of compensability. First, he argues that Seekins Ford did not present substantial evidence to rebut "alternative" presumptions of compensability that he ar-

1. *Blanas v. Brower Co.*, 938 P.2d 1056, 1059 (Alaska 1997).

2. *Cowen v. Wal-Mart*, 93 P.3d 420, 424 (Alaska 2004) (internal quotation marks omitted); *see also Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1049 (Alaska 1978).

3. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 869 (Alaska 1985).

4. *Robinson v. Municipality of Anchorage*, 69 P.3d 489, 493 (Alaska 2003).

5. *See Bolieu v. Our Lady of Compassion Care Ctr.*, 983 P.2d 1270, 1276 (Alaska 1999) (remanding because of "the Board's failure to make reviewable findings of fact concerning" a contested issue). *Cf. L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000) (holding

that whether superior court's findings comport with requirements of Indian Child Welfare Act is reviewed de novo as question of law).

6. AS 23.30.120 provides that "(a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter...."

7. *Carlson v. Doyon Universal-Ogden Servs.*, 995 P.2d 224, 227 (Alaska 2000).

8. *Id.* at 229 (internal quotation marks omitted).

9. *Id.* at 227.

gues were raised by evidence of his chronic pain and the futility of searching for work. Second, he argues that Seekins Ford presented insufficient evidence of regular and continuously available work in the statutorily defined labor market.

### 1. The board's findings that Leigh could work were insufficient to support its conclusion that he was not totally and permanently disabled even though he was suffering from severe, debilitating pain.

■ In defining permanent total disability, Alaska has adopted the "odd-lot" doctrine, which states that "total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." [10] Leigh contends that he established "alternative" presumptions of "odd-lot" status by demonstrating that he suffered from "continuous, severe and debilitating pain" [11] and that any search for employment would be futile. [12] Reasoning that Seekins Ford did not rebut these presumptions, Leigh concludes that he is entitled to PTD status.

Neither of Leigh's alternative presumptions has been recognized as established in Alaska law. Given the broad scope of the statutory presumption of compensability, [13] it is not apparent from the present case that additional or alternative presumptions are necessary to protect Alaskan workers. Nor is it apparent how the alternative presumptions would benefit Leigh. It seems likely that evidence sufficient to rebut Alaska's statutory presumption of compensability would also rebut the presumption Leigh would base on evidence that any search for employment would be futile, [14] or that he is incapacitated by pain. Likewise, it is not apparent why evidence of a debilitating medical condition caused by an employment injury would not give rise to the statutory presumption. In any event, the parties agree that the compensability of Leigh's claim is presumed, and the board found that the presumption of compensability attached to Leigh. It is therefore not necessary to decide here whether the alternative presumptions Leigh proposes are justified or permitted under the Alaska Workers' Compensation Act. Leigh's claim was unsuccessful not because the board failed to apply the presumption in his favor, but because it found that Seekins Ford had overcome that presumption and that Leigh ultimately had not proved his claim by a preponderance of the evidence.

We therefore turn to the real crux of Leigh's appeal. Even if it does not create a presumption of compensability, evidence of Leigh's chronic pain and of the effects of pain medication remains relevant to determining by a preponderance of the evidence whether he is permanently and totally disabled. Leigh argued before the board, and offered evidence to support those arguments, that his chronic pain and the resulting pain medication prevented him from obtaining employment.

■ The board must make findings on all contested issues. [15] When " 'deciding whether the issue was truly a contested one, we must examine the record to determine if there are sufficient indicia of factual develop-

10. *Id.* at 228 (quoting *Olson v. AIC/Martin J.V.,* 818 P.2d 669, 674 (Alaska 1991)).

11. *Kester v. Colonial Manor of Custer,* 571 N.W.2d 376, 381 (S.D.1997).

12. *See Jarvis v. Rexburg Nursing Ctr.,* 136 Idaho 579, 38 P.3d 617, 622 (2001).

13. *Meek v. Unocal Corp.,* 914 P.2d 1276, 1279–80 (Alaska 1996) (holding that presumption of compensability applies to all claims under workers' compensation statute, including claims for PTD benefits).

14. *Compare Kester,* 571 N.W.2d at 381 (requiring as rebuttal showing that "there is suitable employment available in the claimant's community that will accommodate claimant's limitations") *with Carlson,* 995 P.2d at 229 ("[A]n employer must show that there is regularly and continuously available work in the area suited to the employee's capabilities, i.e., that [he or she] is not an odd lot worker.") (internal quotation marks omitted).

15. *See Bolieu,* 983 P.2d at 1276 (remanding because of "the Board's failure to make reviewable findings of fact concerning" a contested issue).

ment on the point in contention ... more than a bald assertion of a theory of recovery for which the record contains no evidentiary basis of support.' " [16] When the claimant introduces evidence that chronic pain prevents him or her from working, the board must therefore make findings that address whether that pain, either by itself or in combination with other circumstances, including the effect of pain medication, renders the claimant permanently and totally disabled.

In this case many of the medical professionals noted serious pain, and one specifically concluded that Leigh was not exaggerating the pain. The board observed that Leigh's treating Arizona neurosurgeon, Dr. Stephen Ritland, wrote in December 1999 that "[w]ith the ongoing medication required and with the ongoing chronic pain and associated limitations, I do not believe that [Leigh] would be effectively employable." The board also noted that "numerous friends, family members and coworkers" testified about Leigh's pain and inability to work, despite his motivation to work. Leigh took narcotic pain medication, and there was evidence that these medications prevented him from working.

There was also circumstantial evidence permitting a contrary conclusion, that pain and pain medications would not prevent him from working. For example, as the board noted, a psychological counseling chart indicated that Leigh was "quite active and mentioned activities including riding a motorcycle, landscaping, doing computer work, fishing and shopping."

Nonetheless, even though the board discussed evidence of chronic pain and the effects of narcotic pain medication, it ultimately made no findings directly addressing the effects of Leigh's chronic pain and the narcotic pain medication on his ability to work or the availability of suitable jobs.

Furthermore, it is difficult to reconcile the comments in Dr. Ritland's December 1999 report (quoted by the board and also set out above) with the board's statements (made at two places in its decision) that Dr. Ritland "concluded [that Leigh] is neither physically,

nor psychiatrically, precluded from work, and that he is presently able to perform work in the sedentary and light ranges." As the board noted earlier in its decision, Dr. Ritland had predicted in 1998, after performing Leigh's fourth surgery, that Leigh would be able to perform light or light to moderate work. Thus, Dr. Ritland's April 21, 1998 clinic note stated that Leigh "would be limited to light, or light to moderate, activity in the long term," but that for retraining purposes he could "start on things such as reading and book work." That note ultimately stated that "whether [Leigh] would be limited to strictly light activity or light to moderate" activity "would depend on his recovery over the next 3 to 6 months." But six months later, Dr. Ritland noted that Leigh "is not ready to return to work.... I don't anticipate that he will be able to return to physical work. If he does return to work, I would anticipate sedentary or office type work at some point in the future."

The board also found it significant that Dr. Ritland had agreed in August 1999 with the conclusion, contained in the report of the employer independent medical evaluation (EIME), that Leigh could perform limited work. But the evidence shows that in June 1999 Dr. Ritland agreed only with the EIME report's conclusions about "objective indications and limitations," and in his clinic note of August 24, 1999 he wrote that "it is difficult to consider employment because [Leigh] does not tolerate sitting or standing for more than a short period of time." Dr. Ritland consistently distinguished between "objective" physical limitations and "subjective" limitations associated with pain and pain medication. His December 1999 clinic note expressed his opinion that "with the ongoing medication required and with the ongoing chronic pain and associated limitations, I do not believe that he would be effectively employable." In January 2001 he disagreed that Leigh could perform the activities described in the job analysis, given "subjective" limitations resulting from chronic pain and narcotics. Dr. Ritland's statements that

---

**16.** *Id.* at 1275 (quoting *Davis v. Dist. of Columbia Dep't of Employment Servs.*, 542 A.2d 815, 820 (D.C.1988)).

Leigh could do some work were based on his assessment of the "objective" status of Leigh's back; after mid–1999 he appears to have invariably qualified those statements with his opinion that chronic pain and the effects of narcotic pain medication rendered Leigh effectively unemployable.

It might have been permissible for the board, in weighing the evidence, to have accorded little weight to Dr. Ritland's opinion that chronic pain and the effects of pain medication prevented Leigh from obtaining regular employment. But the board did not do so explicitly. Nor did it explain why it chose to credit Dr. Ritland's statements that Leigh could perform light and sedentary work while disregarding his seemingly more comprehensive opinion that Leigh was effectively unemployable.

Leigh's claim that chronic pain and the effects of narcotic pain medication prevent him from obtaining employment was an important part of his claim for PTD benefits. We express no opinion whether substantial evidence would support a finding that chronic pain and the effects of narcotic pain medication do not render Leigh permanently and totally disabled. But the board touched on evidence of chronic pain and narcotic pain medication in relatively summary fashion. And it did not squarely address Leigh's contention that, in light of physical limitations, his chronic pain and the required pain medication rendered him incapable of regular employment or retraining. The board may have

thought that this contention was necessarily resolved by its conclusion that Leigh was not "psychiatrically precluded from work." But in our view that conclusion does not dispose of his claim that pain and pain medication prevented him from being employed. We therefore vacate the superior court's appellate decision that affirmed the board's denial of PTD benefits, and remand for further proceedings. On remand the board must resolve Leigh's contentions about the effect of his ongoing pain and his pain medication on his employability.[17]

    2.  **Seekins Ford did not present substantial evidence that work within Leigh's abilities was regularly and continuously available in the relevant labor markets described in AS 23.30.180(a).**

■■■ Leigh also argues that Seekins Ford's evidence of regular and continuously available work in the area is not "substantial" because the employer did not conduct a labor market survey in accordance with AS 23.30.180(a).[18] That statute provides that "[i]n making [the PTD] determination the market for the employee's services shall be (1) area of residence; (2) area of last employment; (3) the state of residence; and (4) the State of Alaska."[19]

■■■ We interpret statutes "so that no part will be inoperative or superfluous, void, or insignificant."[20] The list of relevant labor markets in AS 23.30.180(a) would be super-

---

**17.** Leigh argues that Seekins Ford did not rebut the presumption of compensability arising from his showing of "alternative" grounds for odd-lot PTD entitlement. He therefore concludes that he is entitled to a remand for an award of benefits. We do not regard these theories as stand-alone grounds for conferring PTD benefits on Leigh. These theories necessarily require assessment of what Dr. Ritland regarded as "subjective" considerations. We think the board had to decide whether the evidence supported these "subjective" considerations.

**18.** As a preliminary matter, we note that Leigh's brief does not document the preservation of this issue before the board and the superior court. An unsupported statement at oral argument that the issue had been preserved would not satisfy the controlling rule. *See* Alaska R.App. P. 212(c)(8)(B) ("Appellant's brief shall indicate the pages of the record where each point on appeal

was raised in the trial court. If the point on appeal was not raised in the trial court, the brief shall explain why the point is raised for the first time on appeal."). Because we do not ordinarily consider arguments raised for the first time on appeal, *Crittell v. Bingo*, 83 P.3d 532, 536 n. 19 (Alaska 2004), it is important that an appellant explain exactly how and where each issue on appeal was preserved in proceedings below. Fortunately for appellant, appellee's counsel candidly stated at oral argument that the appellant had preserved the issue below. We therefore consider the merits of this argument.

**19.** AS 23.30.180(a).

**20.** *See City of St. Mary's v. St. Mary's Native Corp.*, 9 P.3d 1002, 1008 (Alaska 2000) (internal quotation marks omitted) (interpreting state statute regulating municipal taxation).

fluous if evidence from the national labor market were sufficient to demonstrate that regular employment was continuously available. We have held that the requirement that the employer provide evidence of regular and continuously available work in the statutorily defined market has been satisfied by surveys of specific and relevant markets.[21] This implies that evidence about the specific market is required. Moreover, as a general proposition, we note that conditions affecting employment markets in Alaska are sufficiently different from conditions affecting employment markets in other parts of the country that evidence specific to Alaska is normally required when Alaska is a relevant labor market under AS 23.30.180(a).

In this case, Leigh relocated to Snowflake, Arizona. The Snowflake area and the state of Arizona are therefore relevant labor markets under AS 23.30.180(a)(1) and (3). But because neither this court nor presumably the board has a great deal of knowledge about job markets in Snowflake or Arizona, we are unwilling to assume that they mirror national trends absent specific evidence to that effect. Evidence that suitable regular employment is continuously available elsewhere in the United States generally does not prove regular and continuously available employment in the labor markets specified by AS 23.30.180(a), absent evidence that the pertinent labor markets are similar to the national market.

Seekins Ford presented the testimony of rehabilitation counselor Betty Cross as evidence of regular and continuously available work in the relevant labor markets. Leigh argues that this testimony is insufficient to support the board's finding that Seekins Ford successfully rebutted the presumption of compensability. Cross had reviewed

Leigh's file and catalogued his abilities, but had not spoken with Leigh or examined him. She identified a number of jobs Leigh could perform despite his limitations.[22] But rather than testify that these jobs were available in the labor markets described by AS 23.30.180(a), Cross testified simply that these jobs were available to Leigh in the "real world." Cross testified that the positions of auto rental clerk and airline security representative are available in airports "across this country." She testified that food and beverage order clerks may find work in fast food restaurants and other establishments. Because there are airports and fast food restaurants in Alaska and Arizona, by implication these jobs are available within the labor markets described by AS 23.30.180(a).[23] Cross also testified that surveillance monitors are employed in most major retail establishments, including a Sears store in Anchorage.

Cross did not expressly testify that regular and continuously available employment existed in the specific labor markets listed in AS 23.30.180(a). It may be inferable from her testimony that Cross believed that the sorts of jobs she discussed are indeed available in the statutory markets pertinent to Leigh. Although the evidence is sufficiently nonspecific that we do not feel compelled to draw that inference, the board may have done so. The board did not reject Cross's evidence as insufficient, and did not fault the absence of specific surveys of the pertinent markets. We note that market survey evidence is often offered by employers. We have not held that a failure to offer evidence of surveys of the statutorily specified employment markets necessarily results in a failure to rebut the presumption of compensability, even though the employer only offers other, more general,

**21.** See Carlson v. Doyon Universal–Ogden Servs., 995 P.2d 224, 229 (Alaska 2000) (evidence of Anchorage labor market survey); Summerville v. Denali Ctr., 811 P.2d 1047, 1051 (Alaska 1991) (evidence of Anchorage labor market survey).

**22.** Cross testified that Leigh could work as an auto rental clerk, gate guard, surveillance system monitor, food and beverage order clerk, charge account clerk, parking enforcement officer, and airline security representative.

**23.** We note that the court could take judicial notice of the fact that there are airports, fast food restaurants, and department stores in Alaska and Arizona. See Alaska R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

evidence of employment availability.[24] Because we have not so held, and because we are remanding for consideration of Leigh's claim that pain and pain medication made him unemployable, we also remand for consideration of the adequacy of the labor market evidence. On remand Seekins Ford may present specific evidence of regular and continuously available employment in the relevant labor markets listed in the statute.[25]

Leigh also argues that Seekins Ford failed to rebut the presumption of compensability because it did not present sufficient evidence that jobs were actually available to him. Our cases have not required employers to show job availability to satisfy the statute. We decline here to adopt the United States Court of Appeals for the Ninth Circuit's apparent requirement that under the federal Longshore and Harbor Workers' Compensation Act the employer identify a specific job as available.[26] Other circuits have not construed the Act to contain that requirement.[27] We are not persuaded that the fortuity of a specific position's availability at any given time determines that a regular market for the job exists. Instead, the proper focus must remain on whether the employer has presented substantial evidence that there are jobs reasonably available in the relevant labor market that the employee could realistically obtain and hold.[28]

Here, as we saw above, Cross testified that openings occur for the jobs that she identified as suitable for Leigh. She did not, however, testify that Leigh had a realistic chance of obtaining and holding these jobs. On remand, Seekins Ford will have the opportunity to supplement Cross's testimony with additional evidence on this point.

Leigh additionally argues that by relying only on the medical evidence and Cross's deposition testimony, the board "erroneously placed the burden of proof on Leigh to disprove the universal negative of not being employable at any work."[29] The board's conclusion that an employer has successfully rebutted the presumption of compensability may be based on medical evidence and expert testimony of the availability of suitable jobs. And once the employer adduces substantial evidence to rebut the presumption of compensability, the burden of proving PTD status by a preponderance of the evidence is properly shifted to the claimant.[30] More-

24. However, as Professor Larson has noted, "it should not be enough to show that claimant is physically capable of performing light work, and then round out the case for non-compensability by adding a presumption that light work is available." 4 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 84.01[3] (2000). Professor Larson bases this view on the "well-known fact of modern economic life that the demand for unskilled and semiskilled labor has been rapidly declining" and recognition that "the great bulk of the persistent hard-core unemployment of the United States is in these categories." *Id.*

25. *Cf. Robles v. Providence Hosp.*, 988 P.2d 592 (Alaska 1999). We there remanded for award of benefits after holding that the employer, by failing to offer evidence of availability of work, failed to overcome the presumption of compensability. *Id.* at 598. Here Seekins Ford offered at least some evidence on the issue.

26. *See, e.g., Hairston v. Todd Shipyards Corp.*, 849 F.2d 1194, 1196 (9th Cir.1988).

27. *See, e.g., Bunge Corp. v. Carlisle*, 227 F.3d 934, 941 (7th Cir.2000); *Trans–State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir.1984); *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042–43 (5th Cir.1981); *Air Am., Inc. v. Dir., Office of Workers' Comp. Programs*, 597 F.2d 773, 779 (1st Cir.1979).

28. *Accord Carlisle*, 227 F.3d at 941 (requiring employer to show that "there were jobs Carlisle was capable of performing" and that "those jobs were reasonably available in the community in which Carlisle was able to compete and whether they could realistically be secured"). The United States Court of Appeals for the Fifth Circuit has also stated that:

> Job availability should incorporate the answer to two questions. (1) Considering the claimant's age, background, etc., what can the claimant physically and mentally do following his injury, that is, what types of jobs is he capable of being trained to do? (2) Within this category of jobs that the claimant is reasonably capable of performing, are there jobs reasonably available in the community for which the claimant is able to compete and which he could realistically and likely secure.

29. *See Lyons v. Indus. Special Indem. Fund*, 98 Idaho 403, 565 P.2d 1360, 1363 (1977).

30. *Carlson*, 995 P.2d at 227.

over, the presumption of compensability shifts only the burden of production, not the burden of persuasion.[31] On remand, more specific evidence of regular and continuously available jobs suiting Leigh's abilities in the statutorily defined job markets may help focus both parties' arguments about whether Leigh is permanently and totally disabled. Leigh will therefore not be required to disprove, as he fears, a "universal negative."

## V. CONCLUSION

We therefore REMAND to the superior court with instructions to VACATE the board's decision and to REMAND to the board for further proceedings consistent with this opinion.

**31.** *See Veco, Inc. v. Wolfer,* 693 P.2d 865, 869 (Alaska 1985).