David G. FAULK and Bonnie
J. Faulk, Appellants,

v.

BOARD OF EQUALIZATION, Kenai
Peninsula Borough, Appellee.

No. S-7276.

Supreme Court of Alaska.

March 28, 1997.

Charles G. Evans, Law Offices of Charles G. Evans, Anchorage, for Appellants.

William R. Evans, Deputy Borough Attorney, and Thomas R. Boedeker, Borough Attorney, Kenai, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

David and Bonnie Faulk appeal a superior court decision upholding a Kenai Peninsula Borough (Borough) property valuation. The valuation, calculated for tax purposes, appraised the Faulks' property at more than twice what the Faulks had paid for the property approximately thirty days before the appraisal. Both the Borough Board of Equalization (Board) and the superior court upheld the valuation. On appeal to this court, the Faulks assert that the Board denied their appeal without making adequate findings. We agree and remand the case to the superior court with directions to remand the matter to the Board for additional findings.

### II. FACTS AND PROCEEDINGS

On December 1, 1993, David and Bonnie Faulk purchased the Harbor Lights Condominium Project (Property) for $495,000. The Property, located in Seward, consisted of twelve condominium units. It had been purchased by the previous owner in 1990 for $565,000. The Faulks apparently attribute the $70,000 difference between the 1990 and the 1993 prices to the previous owner's failure to make necessary repairs. David Faulk testified at length about the poor condition of the Property and asserted that repair problems had stigmatized it. He estimated the total repairs at between $420,000 and $480,-000. In contrast, the Borough questioned whether the Property was truly stigmatized and asserted that the cost of repairs was approximately $168,000.

On January 1, 1994, the Borough's assessor valued the Property for tax purposes at $1,055,400. That figure represented a value of $70,600 for each of the twelve condominium units plus $208,200 for the land. The parties agree that the Borough's assessor estimated the value of the Property by the comparable sales method.[1] They also agree

1. The comparable sales method is a technique for estimating the value of a specific piece of real property by "comparing, weighing, and relating" sales of sites similar to the property being appraised. American Institute of Real Estate Appraisers, The Appraisal of Real Estate 135 (6th ed. 1974).

that there were no condominium complexes in Seward other than the Property that the assessor could have used in the comparable sales analysis. Thus, the assessor estimated the value of the Property by comparing the selling prices for five townhouses in the Seward area. Following the valuation, the Faulks unsuccessfully appealed to the Board and the superior court.

At the hearing before the Board, the Faulks argued that the assessment was improper or excessive because (1) the Property was in poor condition and repairs would be more costly than the appraiser estimated, (2) the Property was not comparable to any of the units that the appraiser used in his comparable sales analysis, and (3) the best way to value the Property was by reference to the recent arms-length sale in which the Faulks purchased the Property. After the Faulks stated their case, one Board member moved for a vote on the Faulks' appeal and stated that the Board should uphold the appraiser's valuation "for the reason that the appellant, Mr. Faulk, has not presented sufficient evidence to prove an unequal, excessive or improper valuation." With no further discussion the Board voted six to one to deny the Faulks' appeal. This appeal followed.

## III. *DISCUSSION* [2]

We have previously concluded that "[t]he threshold question in an administrative appeal is whether the record sufficiently reflects the basis for the [agency's] decision so as to enable meaningful judicial review." *Fields v. Kodiak City Council*, 628 P.2d 927, 932 (Alaska 1981). In answering that question, "[t]he test of sufficiency is ... a functional one: do the [agency's] findings facilitate this court's review, assist the parties and restrain the agency within proper bounds?" *South Anchorage Concerned Coalition, Inc. v. Coffey*, 862 P.2d 168, 175 (Alaska 1993). "[I]n the usual case findings of fact [are] required even in the absence of a statutory duty...." *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 97 n. 11 (Alaska 1974). However, in certain cases, "the issues

[are] such that, based on the record, detailed findings [are] not necessary for this court to understand the agency's reasoning process." *Fields*, 628 P.2d at 932. In one such case, we concluded that an agency did not need to articulate separate findings because the basis for its decision was clear from the entire record. *Mobil Oil*, 518 P.2d at 97. Similarly, in *Coffey*, 862 P.2d at 175, we determined that a reviewing court might supplement an agency's otherwise unclear findings by reading them in the context of comments made on the record by agency members to conclude that the agency provided a sufficient statement of the reasons for its decision.

The Borough first points out that under AS 29.45.210(b) the Faulks bore the burden of proving that the assessment was erroneous. According to the Borough, therefore, the language of the Board's motion constitutes an adequate finding because it indicates that the Faulks did not satisfy their burden. We disagree. The motion presented to the Board reveals little about the Board's reason for denying the Faulks' appeal other than explaining in conclusory fashion that the Board was not persuaded by the Faulks' arguments and evidence. Because all taxpayers bear the burden of proof when challenging a Borough assessment, such a statement would be true of any decision by the Board to deny a party's appeal.

The Borough also argues that the language of the Board's motion, when viewed in light of the entire record, "constitutes sufficient findings to support the Board's decision." As indicated previously, in *Coffey*, 862 P.2d at 175, we concluded that otherwise inadequate findings were acceptable when read in light of the record as a whole. However, this case is distinguishable from *Coffey*. In *Coffey* the issue was whether the Anchorage Planning and Zoning Commission (Commission) had correctly applied the ordinance applicable to its decision to decline to issue to Coffey a natural resource extraction conditional use permit. *Id.* at 173–75. That ordinance empowered the Commission to deny Coffey's request for a conditional use permit

---

2. We give no deference to the decision of the superior court because that court acted as an intermediate court of appeal. *CH Kelly Trust v.*

*Municipality of Anchorage, Bd. of Equalization*, 909 P.2d 1381, 1382 (Alaska 1996).

if the Commission found that Coffey's proposed use would not be "compatible with existing and planned uses in the surrounding neighborhood." *See id.* at 173 (quoting Anchorage Municipal Code (AMC) 21.50.020). In denying Coffey's request, the Commission made express conclusions of fact and law. *Id.* at 171–72. As a part of these findings, the Commission stated that Coffey's plan "proposed a 'massive commercial natural resource extraction' which was in 'inherent conflict' with the 'adjoining residential land uses.'" *Id.* at 175. Thus, when we clarified the Commission's findings by referring to comments made by the commissioners on the record, we had as a starting point express Commission findings that suggested that the Commission had denied the conditional use permit due to the impact of Coffey's use on surrounding neighborhoods—a reason contemplated by the controlling ordinance. *Id.* at 175. Concluding that the Commission had followed the applicable ordinance required us neither to draw extensive inferences nor to speculate about the reasons underlying the Commission's decision.

Unlike the Commission in *Coffey,* the Board did not make findings that might provide us with a starting point for evaluating the Board's decision-making process. Without such guidance, we can only speculate about why the Board thought that the Faulks' evidence was insufficient.

In particular, the language of the Board's motion does not facilitate review of how the Board addressed the assessor's treatment of the recent price paid by the Faulks for the Property. In *CH Kelly Trust v. Municipality of Anchorage, Bd. of Equalization,* 909 P.2d 1381, 1381–82 (Alaska 1996), we concluded that it was reversible error for a municipal appraiser to fail to consider a seven-month-old sale price of a property when the appraiser valued the property for tax

purposes. We noted that "[b]y failing to consider recent sales of the subject property the Municipality ignored directly relevant, albeit not conclusive, evidence of [the property's] value." *Id.* at 1382. We suggested, however, that it would be appropriate for the appraiser to discount or disregard the prior sale price if the appraiser reasonably concluded that the prior sale price did not reflect "prevailing market conditions." *See id.*

In this case, we can only guess how the Board resolved the conflicts between the Borough's and the Faulks' evidence relating to the recent sale price. On the one hand, the Faulks presented uncontradicted evidence that they had purchased the Property approximately thirty days before the assessment in a *bona fide* arm's length transaction in the open market.[3] On the other hand, the appraiser opined that, when valued individually, the twelve units would have a total value greater than $495,000 because the Faulks probably received a bulk discount for purchasing all twelve units of the Property at once. Significantly, however, the appraiser never explained why he stated in his written report that the alleged bulk discount was twenty-five to thirty-five percent but testified that the discount was "anywhere from 30 to 50 per cent."[4]

The Board neither indicated whether it agreed with the appraiser's bulk discount theory nor how, if at all, it resolved the discrepancies between the appraiser's written report and testimony. It also failed to address the Faulks' contention that the poor condition of the Property and lack of comparable condominium complexes demonstrated that the assessed value should have been closer to $495,000 than to $1,055,400. Thus, we have an inadequate basis for determining whether the Board reasonably denied the Faulks' appeal.[5]

3. Specifically, David Faulk testified that (1) the Property had been on the market for "quite a while," (2) other potential investors had "walked away from [it] at the same price," (3) the Faulks were not related to the prior owner and did not know her or her family prior to the sale, and (4) the prior owner had been represented by an independent real estate agent.

4. A twenty-five percent discount suggests a fair market value of approximately $660,000, well below the $1,055,400 assessed value of the Property, while a fifty percent discount indicates a fair market value of approximately $990,000, only slightly less than the assessed value.

5. Because we conclude that the Board did not provide an adequate statement of the reasons for its decision, we cannot address the Faulks' argu-

Where an agency has failed to make adequate findings, we typically remand the case to the superior court with directions to remand the matter to the agency for additional proceedings. *Kenai Peninsula Borough v. Ryherd*, 628 P.2d 557, 563 (Alaska 1981). We apply that same remedy here. On remand, the superior court should instruct the Board to state its reasons for rejecting the Faulks' appeal. When fulfilling these instructions, the Board in its discretion may receive additional evidence and adjust the assessment if it finds that grounds exist for doing so. *See* AS 29.45.210(b).

## IV. CONCLUSION

We REVERSE the decision of the superior court and REMAND for further proceedings consistent with this opinion.

ments that attack the merits of the Board's deci-