Melaku A. AYELE, Appellant,

v.

UNISEA, INC., Alaska National Insurance Company, and Employer's Insurance of Wausau, Appellees.

No. S-8168.

Supreme Court of Alaska.

May 28, 1999.

Eric Dickman, Dickman Law Group, Seattle, Washington, for Appellant.

Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, Seattle, Washington, and Richard L. Wagg, Russell, Tesche & Wagg, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

The Alaska Workers' Compensation Board denied Melaku Ayele's claim stemming from a disability allegedly caused by his exposure to chemicals while working for Unisea, Inc. We must decide whether the Board's decision is deficient for failing to discuss the testimony of Ayele's lay witnesses. Because the Board's findings permit meaningful appellate review, we affirm its decision.

### II. FACTS AND PROCEEDINGS

In 1994, Melaku Ayele filed a claim against Unisea, Inc., and its insurers, Alaska National Insurance Company and Employers Insurance of Wausau (collectively, "Unisea"), seeking benefits for a permanent disability. Ayele alleged that his disability resulted from repeated exposure to ammonia while working for Unisea in Dutch Harbor in 1991 and 1992. According to Ayele, the first major incident of exposure occurred on August 31, 1991, when ammonia fumes leaked into a Unisea freezer van where he was working. Ayele experienced a burning sensation in his throat, shortness of breath, a severe headache, a nosebleed, and vomiting. Later that day, he was taken to a clinic in Unalaska, where he was treated for sinusitis.

Ayele claimed to have suffered additional exposures to ammonia in early September

1991 and in January 1992. He continued to have headaches and episodes of vomiting and stopped working entirely in late January 1992. Ayele left Dutch Harbor and returned to Seattle.

Beginning in February 1992 and continuing through 1993, Ayele saw various doctors in Washington. He continued to feel increasingly ill, eventually experiencing a constant headache, daily vomiting, and frequent nosebleeds. In addition, he began to suffer from severe depression and paranoid thinking. In November 1992, he began seeing a psychiatrist, Dr. Guido Aversa, who described Ayele as having suicidal thoughts and as feeling extreme rage towards and desiring revenge against those at Unisea whom Ayele thought responsible for his illness. On November 10, Ayele was hospitalized under Dr. Aversa's care. In late January 1993, Dr. Aversa diagnosed him as suffering from psychotic depression with persecutory ideas; he described Ayele as "gravely disabled ... [with] a continuous headache, ... difficulties with his nose, ... [and] continued nausea."

Despite continued care from Dr. Aversa and other physicians, Ayele's condition showed no marked improvement. In January 1994, he applied to the Board for adjustment of his claim, seeking benefits for permanent partial disability. Unisea controverted this claim.[1] In July 1995, at Unisea's request, Ayele was examined by a panel of three independent physicians. Each doctor concluded that Ayele's condition was unrelated to his employment at Unisea. Each believed that his symptoms stemmed from psychological difficulties rather than from chemical exposures at Unisea. Dr. Brent T. Burton summarized the panel's finding, in relevant part, as follows:

> Mr. Ayele is a 37 year-old worker who complains of multiple symptoms which he states are the result of an alleged exposure to ammonia fumes encountered during August 1991. In spite of complete removal from the workplace and any potential continuing exposure, Mr. Ayele indicates that his multiple symptoms have increased in severity. His symptoms now encompass depression, memory disorder, chronic re-current headaches, nasal irritation and recurrent bleeding, nausea and vomiting and aversion to various odors. Based upon Mr. Ayele's history and the medical data available in this case, there is no evidence to support a diagnosis of an occupational exposure or injury. The basis for Mr. Ayele's expression of symptoms is his underlying psychiatric disorder which is not work-related.

> ....

> The clinical course of Mr. Ayele's complaints is totally inconsistent with an acute exposure to ammonia (or any other irritant substance) since such symptoms and illness would be transient (and would result in chronic pulmonary symptoms and findings[,] *not isolated upper airway symptoms and headaches*). An exposure to ammonia (or any other substance identified at the UniSea, Inc. processing plant) is incapable of causing depression or any related psychiatric disorders.

At the workers' compensation hearing, Ayele and Unisea agreed that Ayele was disabled but disagreed as to whether his disability was related to his employment at Unisea. Unisea relied on the reports of the three-physician panel and on other medical evidence indicating that Ayele's disability was not work related: Ayele relied on testimony by Dr. Aversa. He also presented testimony from four lay witnesses: his brother and three former Unisea co-workers. None of these witnesses had seen the August 31, 1991, incident that Ayele claimed was his first major exposure to ammonia fumes. But all had observed and spoken with Ayele soon after the incident; their testimony describing Ayele's complaints, conduct, and visible symptoms tended to support Ayele's version of events.

The Board concluded that Ayele's evidence was sufficient to raise the presumption of compensability but that Unisea had successfully rebutted the presumption. Because the Board found that Ayele had not proven by a preponderance of the evidence that his condition arose out of his employment, it denied his claim. The Board's decision extensively

---

1. Until then Unisea had been paying Ayele workers' compensation benefits.

discussed the medical evidence but did not mention Ayele's lay witnesses.

The superior court affirmed the Board's decision. Ayele appeals.

## III. *DISCUSSION*

■ Although Ayele lists nine points on appeal, he briefs and argues only one—whether the Board's failure to discuss the lay-witness testimony amounts to reversible error insofar as it prevents meaningful review of the Board's decision.[2]

In its decision rejecting Ayele's claim, the Board thoroughly discussed and ultimately accepted the opinions expressed by the three physicians who performed Ayele's independent medical examinations: Dr. Brent T. Burton, the medical director of Occupational Health Services at Oregon Health Sciences University; Dr. F. Blair Simmons, a professor of otolaryngology at Stanford University Medical Center; and Dr. Dejene Abebe, an instructor of psychiatry at Harvard Medical School. In contrast, the Board failed to even mention Ayele's four lay witnesses: Shimeles Woldegebriel, Abraha Gebremeskel, Mohammed Hassen, and Belayneh Negash.

Relying chiefly on *Stephens v. ITT/Felec Services*,[3] Ayele asserts that because these witnesses undermine the Board's decision and validate his claim, this court "cannot perform its role as a reviewing Court where this contradictory evidence is ignored by the Board." But this argument misinterprets *Stephens* and mistakenly assumes that the lay-witness testimony in this case is potentially material to the Board's decision.

*Stephens* is distinguishable from the present case. There, an injured worker, Ste-

phens, sought compensation for a heart attack that he had suffered while working at a remote job site.[4] Several medical experts testified that the heart attack was not work related.[5] The experts had only limited information about the actual work conditions under which Stephens's heart attack occurred, and they expressly based their opinions as to work-relatedness on various assumptions concerning those work conditions.[6] Although Stephens presented lay-witness testimony tending to undermine these assumptions, the Board adopted the experts' opinions and denied Stephens's claim without even mentioning his witnesses.[7] We remanded for further findings, concluding that we could not adequately review the Board's decision without knowing how the Board viewed Stephens's lay-witness testimony.[8]

In so ruling, we by no means held that the Board must discuss all lay-witness testimony touching on a disputed issue. Instead, we relied on the specific nature of the evidence that the Board's decision failed to address and its peculiar relevance to the issue actually contested: whether Stephens's work environment caused or contributed to the heart attack—which undisputably occurred at work and resulted in his injuries—or whether the attack resulted from his preexisting physical condition.[9] Thus, our decision requiring the Board to address Stephens's lay-witness testimony simply recognized the "potential materiality" of that testimony in the specific factual setting of Stephens's case.[10]

As in *Stephens*, the Board's decision in this case turned on whether the injury in question resulted from work conditions. But the lay-witness testimony here lacks the "potential materiality"[11] of its counterpart in *Ste-*

---

2. Ayele has expressly declined to brief his other points, stating that "[i]f the Court finds against [him] on whether or not the lay witnesses must be considered by the Board, there is no other reason to remand this matter for further proceedings." Whether the Board's findings are adequate to permit appellate review is a legal question that we decide by exercising our independent judgment. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

3. 915 P.2d 620 (Alaska 1996).

4. *See id.* at 622–24.

5. *See id.* at 624–25.

6. *See id.* at 625.

7. *See id.* at 627.

8. *See id.* at 627, n. 8.

9. *See id.* at 625–27.

10. *Id.* at 627; *see id.* at 625.

11. *Id.* at 627.

*phens* because it does not undermine the expert testimony on which the Board chose to rely.

 In this case, the lay-witness testimony bears little relevance to the Board's ultimate finding of lack of causation. The lay witnesses testified about Ayele's statements, appearance, and treatment by Unisea during the months immediately following the August 31, 1991, incident, describing him as consistently complaining of exposure to ammonia and of headaches, nosebleeds, and vomiting. At most, these accounts supported Ayele's theory of causation by tending to confirm that during that period Ayele had in fact been exposed to ammonia.

 The medical experts did not seriously question that Ayele had made the complaints described by his lay witnesses, or even that he might have been exposed to ammonia. They did question whether Ayele's complaints had been corroborated by any objective medical observations. But the lay-witness testimony sheds little light on this issue. Moreover, the issue of Ayele's condition in 1991 is itself of minor importance. Despite Ayele's assertions to the contrary, the experts' ultimate opinions concerning Ayele's present condition did not hinge on assumptions concerning the August 1991 incident. Rather, they drew on years of medical history and on recent, thorough examinations of Ayele.

From all of this evidence, the experts concluded that "[a]n exposure to ammonia (or any other substance identified at the Uni-Sea, Inc.[,] processing plant) is incapable of causing depression or any related psychiatric disorders." In basing its decision on this medical opinion, the Board found, as did the experts, that Ayele's present disability was primarily psychological and could not have been caused by his work conditions at Unisea, even accepting Ayele's claim of exposure to ammonia.

Because the lay-witness testimony merely supported Ayele's claim of past exposure to ammonia and did not cast doubt on the validity of the expert testimony which the Board accepted, the Board's failure to mention those witnesses in its decision denying bene-

fits does not preclude meaningful appellate review. Accordingly, we reject Ayele's argument that *Stephens* requires a remand to the Board.

## IV. CONCLUSION

For these reasons, we AFFIRM the Board's decision denying Ayele benefits.