In the Matter of the DISSOLUTION OF the MARRIAGE OF Paul Bernard ALA-BACK and Judith Kathryn Hall, Husband and Wife.

No. S–8336.

Supreme Court of Alaska.

March 10, 2000.

**1182**

Mary Alice McKeen, pro se, Juneau.

Barbara T. Walker, pro se, Juneau.

Before MATTHEWS, Chief Justice, and EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. *INTRODUCTION*

This case presents a rather odd alignment of parties and interests. Perhaps oddest of all, in a case styled "In re Alaback and Hall," is the absence of the father, Paul Alaback; the child, S.A.; and the mother, Judith Hall,[1] as litigants in the instant action. Instead, the only litigants here are Hall's former attorney, Mary Alice McKeen, and S.A.'s former guardian *ad litem* (GAL), Barbara Walker.

The case began as a child custody dispute between Hall and Alaback over S.A. McKeen now appeals the superior court's denial of her motion to unseal part of the record from that proceeding and to lift a "gag" order on that same material. Because we find no impropriety in the superior court's action, we affirm that decision.

## II. *FACTS AND PROCEEDINGS*

### A. *The Child Custody Proceeding*

A decree of dissolution ended Hall and Alaback's marriage in 1991. Pursuant to the agreement of the parties, the court entered a child custody and support order granting joint custody. Almost a year later, Hall filed a motion to modify the custody arrangement. Alaback opposed the motion and moved for appointment of a GAL. The court appointed Walker to fill this role, charging her with "represent[ing] the best interests of the parties' minor child, [S.A.], in this action."

In the course of her duties as GAL, Walker met with S.A. several times. Walker brought a cassette recorder to the second of these meetings, which took place on March 23, 1993. At S.A.'s request, at least part of their conversation during that meeting was taped. That tape and its contents form the bone of contention between McKeen and Walker here.

S.A. told Hall about the tape, and Hall (through her counsel, McKeen) requested a

---

1. Hall filed a "motion to join appeal" on January 22, 1999, over a month after the case was argued. This motion was denied as moot, since Hall was a party to the action by virtue of Alaska Rule of Appellate Procedure 204(g). As the order further provided, if Hall sought to bring substantive information before the court, it was untimely.

copy of it from Walker. McKeen made this request first informally and then formally, via a request for production. Walker (then herself represented by a court-appointed attorney, Patricia Collins) indicated her willingness to provide McKeen with the tape, but only after she was assured that McKeen would not turn over the tape to Hall.

Hall and Walker agreed on a stipulation to that effect. It provided, among other things, that Walker would provide the tape to Collins, who would then redact irrelevant portions before making the tape available to McKeen. The stipulation further provided that

> (2) [McKeen] will not disclose to Ms. Hall the contents of the tape or the contents of notes concerning Ms. Walker's discussions with [S.A.]. [McKeen] may discuss with Ms. Hall [McKeen's] evaluation of these materials in so far as they affect this case. The only disclosure that may be made of the contents of the tape ... [is] to experts consulted in connection with this case or if ... the court permits or the parties agree to disclosure different from [that specified above].
>
> (3) This stipulation is made without prejudice to either the mother or the Guardian's [GAL] right to ask the court to order or permit disclosure different from [that specified above].

McKeen listened to the tape the same day she (as Hall's attorney) signed the stipulation, and she took notes on the tape's contents. Despite the provisions of the stipulation, however, McKeen allowed Hall access to these materials during the ensuing trial—in her own words, she "inadvertently violated the Stipulation and let [my] client read the GAL's notes of that meeting." Moreover, McKeen provided Hall a typed copy of these notes after the trial had ended. McKeen stated that she "believed that the tape and her notes had become part of the public record of the trial."

After the five-day trial, the court awarded legal and physical custody to Alaback, with "liberal visitation" rights to Hall. This deci-

sion was not appealed, pursuant to the parties' stipulation that Alaback would pay half of Hall's attorney's fees if Hall would agree not to appeal. Alaback's portion amounted to just over $9,000.

### B. *The Sealing and Disclosure Dispute*

The current dispute arose when, anticipating Walker's request for payment of her GAL fees, Hall moved for an order that she be relieved of her duty to pay her portion of the fees.[2] In an affidavit attached to that motion, Hall referred to and quoted from the tape of Walker's conversation with S.A. She also appended a copy of McKeen's typed notes to her affidavit.

After this motion was filed, Collins sent a letter to McKeen stating that Collins viewed the fact that Hall had a copy of the notes as a violation of the stipulation. Hall then filed a motion for "clarification of her obligations" under the stipulation. In her supporting memorandum, Hall argued that "the court made the tape and counsel's handwritten notes of the tape part of the public record and hence available to Ms. Hall or any other interested member of the public." Therefore, Hall asserted, it was not a violation of the stipulation for McKeen to put the notes "in a readable form for her client" by typing them up.

Superior Court Judge Thomas M. Jahnke disagreed with Hall's assessment of the status of the notes. The court ordered that the tape and all notes based on the tape

> shall remain sealed in [McKeen's] files and not shared with any other person, including a party. Unless they have previously been released by the clerk, the above-mentioned items shall remain sealed in the court file and may not be released to or viewed by a party or counsel.

Hall then filed another motion, which the superior court treated as a motion for clarification and partial reconsideration. In that motion, Hall stated that, shortly after the trial, she requested the tape from the courthouse clerk. Hall claimed that she was al-

---

**2.** Hall and Alaback were each to pay one-half of Walker's GAL fees pursuant to the order appoint- ing Walker.

lowed to listen to the tape at that time and that she and the public at large should have access to the tape. She argued that, far from being sealed, "the tape should be reviewed to determine if ethical, reasonable, and objective interviewing techniques were employed by the GAL." Judge Jahnke denied this motion as well, ordering that "[t]he tape and notes shall be retained in the court file and sealed unless Mr. Alaback and Ms. Walker consent in writing to their release and publication."

Three years later (and nearly four years after the meeting between S.A. and Walker), McKeen, who had withdrawn as Hall's attorney, filed a motion to unseal the material and to allow disclosure of it. This motion apparently was prompted by an ongoing dispute between McKeen (and others) and Walker that manifested itself in other cases. Walker opposed the motion. Judge Jahnke denied the motion, stating that he could not "determine the potential significance of the notes in a case assigned to another judge.... That significance, if any, is best judged by the judicial officer presiding in the new case." McKeen appeals.

## III. *DISCUSSION*

■ McKeen argues that the superior court's denial of her motion to unseal and to allow disclosure of the notes was improper. She asserts that Alaska's "open records" law and the freedom of expression clauses of the United States and Alaska Constitutions give her the right to access and disclose the contents of the materials at issue.[3]

■ In response, Walker argues that McKeen lacked standing to file the motion to unseal the records and lift the gag order; and, further, that McKeen lacks standing to prosecute this appeal. Walker also argues that McKeen's appeal is time-barred, because Appellate Rule 204(a)(1) requires all appeals to be brought within thirty days of the judgment. Finally, Walker argues that the stipulation in the original child custody dispute, which restricted McKeen's ability to disclose the contents of the tapes, bars McKeen from now seeking to disclose this material in a broader manner.[4]

### A. *McKeen Has Standing to Challenge the Court's Orders.*

Walker argues that McKeen lacks standing to seek to open the records and lift the gag order. This is so, Walker claims, because McKeen was not a party to the original action. While this argument has superficial appeal, it is unavailing.

■ Alaska grants standing to any person who can show an "injury-in-fact."[5] The degree of injury need not be great—it must only amount to an "identifiable trifle."[6]

Here, McKeen asserts that the continued sealing of the records and the gag order violates her constitutional rights. Both of the orders are specifically directed at McKeen—she may neither discuss the contents of the notes with anyone (besides ex-

---

**3.** McKeen also argues in her reply brief that "a permanent closure of these records would violate substantive due process and would be a denial of procedural due process." Points given only a cursory treatment in the argument portion of a brief will not be considered on appeal, even if developed in the reply brief. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (citing *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks,* 475 P.2d 35, 36 (Alaska 1970)). For this reason we decline to address these claims. In any event, as discussed below, the records are not "permanently" closed—they may be opened if a judge in a later proceeding sees fit to do so. *See infra* note 11.

**4.** Walker also requests fees and costs, pursuant to Appellate Rule 510. That rule, however, only

allows assessment of such sanctions when an appeal (1) delays the proceedings and (2) appears to have been filed merely for the purpose of delay. Walker, while calling McKeen's appeal "frivolous," does not allege that McKeen's appeal delayed the proceedings, nor that it was filed merely to cause delay. Thus, Walker is not entitled to fees or costs under Appellate Rule 510.

**5.** *See Wagstaff v. Superior Court,* 535 P.2d 1220, 1225 (Alaska 1975) (citing *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).

**6.** *See id.* at 1225 n. 7 (quoting Kenneth Culp Davis, *Standing: Taxpayers and Others,* 35 U. Chi. L.Rev. 601, 613 (1968)).

perts in the now-concluded child custody case) nor show the notes in her file to anyone without the court's permission.

■ As we have formulated the standing requirement elsewhere, this assertion shows McKeen's "interest in the ultimate resolution of [her] claims."[7] McKeen's freedom of expression rights were "adversely impacted" by the orders, because the orders barred her from disseminating the contents of S.A.'s interview with Walker.[8] Thus, McKeen had—and has—standing under Alaska law.

**B.** *Rule 204(a) Does Not Bar McKeen's Appeal.*

■ Walker is correct that Appellate Rule 204(a)(1) requires appeals to be filed "within 30 days from the date ... of distribution." However, McKeen is not appealing the 1993 judgment of the superior court regarding the child custody dispute, but rather the court's denial of her motion to unseal the tape of Walker's interviews and to allow the disclosure of its contents. That motion was initially denied on April 28, 1997. McKeen filed a motion for reconsideration on May 8, 1997. The court apparently did not rule on that motion; thus, as McKeen asserts, under Civil Rule 77(k)(4), the motion is to be taken as denied as of June 9, 1997. McKeen filed her notice of appeal on July 9, 1997, within the thirty-day limit of Appellate Rule 204(a)(1). Thus, this appeal is timely.

**C.** *We Need Not Determine Whether McKeen Is Bound by the Stipulation Not to Reveal the Contents of the Interview with S.A.*

Walker argues that the stipulation in the original child custody dispute, which restricted McKeen's ability to disclose the contents of the tape, bars McKeen from now seeking to disclose this material in a broader manner. We need not address this argument, because the court's sealing and gag orders independently apply to McKeen. Therefore, we need not determine whether she is bound by the terms of the stipulation.

**D.** *The Superior Court's Refusal to Lift the Gag Order and Unseal the Records Was Proper.*

1. *Standard of review*

■ We have never articulated the standard of review to be used when examining a superior court's denial of a motion to unseal the records of a child custody proceeding and to lift a gag order regarding such a proceeding. However, AS 25.20.120 allows the court to close the records of such proceedings "if it is in the best interests of the child."[9] This "best interests of the child" is the only limitation on the court's power to seal the records and proceedings. We have traditionally reviewed court decisions in child custody matters to determine whether they were clearly erroneous or constituted an abuse of discretion.[10] Since such decisions often hinge on an analysis of the best interests of the child, it is sensible to apply those standards here as well.

2. *The court's denial of McKeen's motion to unseal the records was proper.*

The propriety of the original order sealing records of Walker's interview with S.A. is not at issue in this appeal. The original order is many years old and McKeen did not appeal the entry of that order. Accordingly, it is no longer open to challenge, except perhaps under Civil Rule 60(b).

Indeed, McKeen did not purport to attack the original order; rather, she simply moved

---

**7.** *Moore v. State,* 553 P.2d 8, 25 (Alaska 1976).

**8.** *See Anchorage Sch. Dist. v. Murdock,* 873 P.2d 1291, 1292 (Alaska 1994) (citing *Municipality of Anchorage v. Leigh,* 823 P.2d 1241, 1247 n. 11 (Alaska 1992)).

**9.** AS 25.20.120 provides:
At any stage of a proceeding involving custody of a child the court may, if it is in the best interests of the child, close the proceeding to the public or order the court records closed to

the public temporarily or permanently. The court may modify or vacate an order under this section at any time.

**10.** *See, e.g., Gratrix v. Gratrix,* 652 P.2d 76, 79–80 (Alaska 1982) ("We will reverse a trial court's resolution of custody issues only if this court is convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous.").

**1186** 

to unseal the records. Noting that the original stipulation was without prejudice to a later request for disclosure, McKeen stated, "Counsel now seeks disclosure of the material. . . ." Her motion claimed that there was no longer any compelling reason to keep the original order in effect—that the supposedly confidential information had already been made public, and that "the fact that [S.A.] is older makes . . . harm much more unlikely." Similarly, in appealing the superior court's denial of her motion to unseal the records, McKeen questions what justification there is for the *continuing* limitation on the use of these materials."

█ Because the trial court's original order is no longer open to challenge, and since McKeen's motion to unseal the records did not actually challenge it, Judge Jahnke was entitled to start from the premise that the order had been validly entered. Thus, McKeen's motion imposed no duty on Walker to justify the original order; to the contrary, it was McKeen who bore the burden of convincing the court that good cause existed to grant her motion—that she had a legitimate interest in disclosure and that an order unsealing the files would have no adverse impact on S.A.'s welfare.

█ In denying McKeen's motions, Judge Jahnke effectively resolved two distinct issues. First, insofar as McKeen was merely asserting a general public interest in access to public records, the court implicitly ruled that she had failed to meet her burden to prove that her interest in disclosure outweighed the potential harm to S.A. Second, insofar as McKeen asserted a more specific—and perhaps more compelling—need to use the records in litigation against Walker, Judge Jahnke decided that her specific need for disclosure could best be evaluated and weighed against S.A.'s competing interest in confidentiality in the context of the proposed litigation, once McKeen had filed an action and a judge had been assigned to hear it. Moreover, that Judge Jahnke did not know how the materials might be used in other proceedings that were not before him sug-

gests to us an excellent reason to exercise his discretion against disclosure: The court was left without a complete picture of the effects of the action it was being requested to take. It was not an abuse of discretion for the court to refuse to lift the stipulated confidentiality order at McKeen's request alone. For the reasons set out above, Judge Jahnke acted well within his discretion in making this ruling.

3. *The superior court's refusal to lift the gag order was proper.*

█ While the superior court's refusal to lift the gag order is a separate issue from its refusal to unseal the records, we resolve these issues identically. Because McKeen did not appeal the 1993 custody judgment, she is not entitled to challenge the validity of the original order. Accordingly, Judge Jahnke was entitled to begin with the proposition that the order was validly entered and McKeen bore the burden of showing that lifting the gag order would have no adverse impact on S.A.'s welfare. Because the general public interest in McKeen's being able to discuss these matters openly was not sufficient to meet this burden, the trial court acted within its discretion in denying the motion to lift the gag order.

## IV. CONCLUSION

The superior court was entitled to view the original confidentiality orders as having been properly entered. It was not an abuse of discretion on the superior court's part to refuse to lift them on McKeen's motion. Therefore, we AFFIRM the superior court's denial of McKeen's motion to unseal the records and to lift the gag order concerning them.[11]

---

**11.** This decision does not necessarily mean that the sealing and gag orders are in place in perpetuity. Rather, we endorse Judge Jahnke's wise

approach to the "potential significance of the notes" in future cases, outlined in his April 28, 1997 order. That is, if the notes are alleged to

have probative value in another case, the judge presiding there should decide whether or not to lift the orders.