**Sonja ALVAREZ, Appellant,**

v.

**KETCHIKAN GATEWAY BOROUGH, Appellee.**

**No. S–9030.**

Supreme Court of Alaska.

Aug. 17, 2001.

Sonja Alvarez, pro se, Ketchikan, Appellant.

Scott A. Brandt–Erichsen, Borough Attorney, Ketchikan, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

### I.  INTRODUCTION

Sonja Alvarez appealed the 1997 property tax assessment for three of her properties to the Ketchikan Gateway Borough Board of Equalization.  The Board affirmed the assessments, and Alvarez appealed to the superior court, which affirmed the decision of the Board.  Alvarez has appealed various aspects of the superior court's decision.  For the reasons stated below, we affirm.

### II.  FACTS AND PROCEEDINGS

Sonja Alvarez owns three parcels of property in Ketchikan: two adjacent unimproved lots (lots A and B) [1], and her residential property including a house and another building located at 124 Nadeau Street.  In 1997 the Ketchikan Gateway Borough Assessor assessed these properties for tax purposes at the following values: lot A, $30,000; lot B, $30,600; the residential property, $196,600.

Alvarez appealed these assessments to the Ketchikan Gateway Borough Board of Equalization.[2]  On April 14, 1997, the Board held separate hearings for each of the three parcels, and, after hearing from both Alvarez and the borough assessor, the Board affirmed each of the 1997 assessments.

As for lots A and B, the Board considered these assessments as, respectively, Appeal No. 424 (lot A) and Appeal No. 425 (lot B).  Even though there were separate hearings for the two lots, the arguments made by the parties were the same for both.  Alvarez claimed that the market value (and therefore, the value for tax assessment) of the two lots together was $50,000 because that was the best offer that she received to buy them when she had them on the market for sale.  The borough assessor, on the other hand, argued that Alvarez's attempts to sell the lots were substandard and that sales of comparable local property suggested a true market value of approximately $60,600 for both lots.  There was also some discussion of the effect of the closure of a nearby timber mill on land values;  Alvarez claimed that this should reduce the assessment, while the borough assessor claimed that surveys showed that the closure had no effect on the market value of unimproved properties.

The Board voted against Alvarez and in favor of the borough assessor as to both unimproved lots, by a vote of five to two.

As for Alvarez's residential property, the Board considered this assessment as Appeal No. 423.  Alvarez argued that the assessed value of this property increased dramatically (from $160,900 to $206,450) between 1992 and 1993, and that this increase was based on various factual errors made by the borough assessor.  Alvarez claimed, among other things, that the assessed value was based on the assumption that her property had a functional garage and balcony, while in reality these features were unusable.  Alvarez also claimed that a neighbor's building encroached on her land and that the square footage of encroachment should not be included within her taxable square footage.  The borough assessor responded by claiming that the 1997 assessment included corrections for past errors, and was verified by an exterior inspection;  Alvarez apparently refused to allow an interior inspection.  The borough assessor also claimed that no adjustment for the encroachment was warranted, because the encroachment did not affect market value—as shown by an analysis of similar encroachments on other properties.

The Board voted against Alvarez and in favor of the borough assessor, affirming the assessment of the residential property by a vote of five to one.

Alvarez appealed the Board's decisions to the superior court on May 15, 1997, and the case was assigned to Superior Court Judge Thomas M. Jahnke.  Alvarez appealed the merits of the Board's decisions, and she also filed a motion to supplement the record with the borough assessor's complete files on her properties.  After briefs were filed by both sides, the superior court denied the motion to supplement the record and affirmed the

---

1.  Lot A is Parcel No. 30–3640–142–000, and lot B is Parcel No. 30–3640–143–000.

2.  The Ketchikan Assembly hears appeals of property tax assessments as the Ketchikan Gateway Borough Board of Equalization.  *See* AS 29.45.200.

Board's decision. Alvarez filed a motion for rehearing with the superior court, and the court denied the motion, holding that it was untimely under Appellate Rule 506. Alvarez appeals these decisions.

### III. *STANDARD OF REVIEW*

In this appeal we must review two procedural decisions of the superior court: the denial of Alvarez's motion to supplement the record, and the denial of Alvarez's petition for rehearing. We review these decisions for abuse of discretion.[3]

We must also review the superior court's ruling that the Board's findings of fact were sufficient to permit meaningful appellate review. We give no deference to the superior court's decision on this issue because it was acting as an intermediate court of appeal.[4] Whether the Board's findings are sufficient to permit appellate review is a legal question that we decide by exercising our independent judgment.[5]

### IV. *DISCUSSION*

We must consider four issues in this appeal: (A) the timeliness of Alvarez's appeal; (B) the denial of Alvarez's motion to supplement the record on appeal; (C) the sufficiency of the Board's factual findings; and (D) the denial of Alvarez's motion for rehearing. These will be addressed in turn.

#### A. *Timeliness of Alvarez's Appeal*

The Borough, citing Appellate Rule 204(a)(1), claims that Alvarez's appeal to this court was not timely and that therefore we do not have jurisdiction over this appeal. Alaska Rule of Appellate Procedure 204(a)(1) provides:

> The notice of appeal shall be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from, unless a shorter time for filing a notice of appeal applies as provided by Rules 216–220.

The Borough claims that the appeal was not made until more than thirty days after the superior court's July 23, 1998 decision. Alvarez denies that the appeal was untimely.

We will not address this argument because it was not properly presented to us. The Borough's argument was made only in passing in its jurisdictional statement and was not briefed on appeal.[6] We therefore decline to address this argument.

#### B. *The Superior Court Properly Denied Alvarez's Motion to Supplement the Record.*

Alvarez made a motion below to supplement the record on appeal to include the entire borough assessor's file on each of the three properties concerned in this appeal. The superior court denied this motion on the grounds that Alvarez failed to show that any of the materials that she sought to add either were considered by the Board, or were not already present in the record on appeal.

As the Borough points out, Alaska Appellate Rules 604(b)(1) and 210 are controlling on this issue. Appellate Rule 604(b)(1) establishes that the record for an appeal from an administrative agency "consists of the original papers and exhibits filed with the administrative agency," and also establishes that Appellate Rule 210 applies, with some limited exceptions not applicable here. Rule 210(i) allows for modification of the record on appeal if the record does not "truly disclose[ ] what occurred" in the trial court, or if "anything material" is omitted from the record:

> *Power of Court to Correct, Modify or Supplement.* . . . [I]f any difference arises whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to that court's decision. If anything material to either party is omitted from the record on appeal by error or accident by court

---

**3.** *See Balough v. Fairbanks North Star Borough,* 995 P.2d 245, 254–55 (Alaska 2000) (denial of motion to supplement the record); *Harrelson v. Harrelson,* 932 P.2d 247, 250 (Alaska 1997) (denial of Civil Rule 77 motion for reconsideration).

**4.** *See Faulk v. Board of Equalization,* 934 P.2d 750, 751 n. 2 (Alaska 1997).

**5.** *See Ayele v. Unisea, Inc.,* 980 P.2d 955, 957 n. 2 (Alaska 1999).

**6.** *See In re Dissolution of Marriage of Alaback,* 997 P.2d 1181, 1184 n. 3 (Alaska 2000) ("Points given only a cursory treatment in the argument portion of a brief will not be considered on appeal, even if developed in the reply brief.").

personnel, or is misstated therein, the parties by stipulation, the trial court, or the appellate court ... may direct that the omission or misstatement shall be corrected. All other questions as to the content and form of the record shall be presented to the appellate court.

Alaska Statute 29.45.210(d), which specifically concerns hearings before municipal boards of equalization, also applies and provides:

An appellant or the assessor may appeal a determination of the board of equalization to the superior court as provided by rules of court applicable to appeals from the decisions of administrative agencies. Appeals are heard on the record established at the hearing before the board of equalization.[7]

The record on appeal in this case included all parts of the borough assessor's files that were submitted as evidence at the Board hearing and marked as exhibits. Alvarez claims that the Board considered and made reference to materials in these files that were not formally marked as exhibits, and that these materials should have been part of the record on appeal. The Borough, citing *Cool Homes, Inc. v. Fairbanks North Star Borough*,[8] claims that the record established at the Board's hearing, and therefore the record on appeal, properly consisted only of those materials marked as exhibits.

We have considered the issue of supplementation of the record on appeal of an administrative agency decision in several previous decisions.[9] In these decisions, we stated that the record on appeal in such cases properly consists of evidence that was either "submitted to" or "considered by" the administrative board.[10] We have also noted that a superior court's refusal to supplement the record is harmless if the excluded material would not have changed the outcome of the dispute on appeal.[11]

None of the material that Alvarez claims was wrongly excluded was actually "submitted to" or "considered by" the Board. A review of the transcript of the Board's hearings indicates that all of the materials presented to, considered by, and discussed by the Board in these hearings, both formally and informally, are contained in the record on appeal. These materials are:

- the assessor's reports on each of the properties, including the appeal forms filled out by Alvarez;
- the list of comparable properties used by the assessor to calculate the market values of lots A and B;
- the assessor's assessment valuation history for lots A and B and for the residential property;
- Alvarez's classified ads placed in an attempt to sell lots A and B;
- correspondence between Alvarez and the assessor concerning her residential property;[12]
- photographs of Alvarez's residential property with associated commentary;
- the assessor's written explanation of its corrections to the residential property's value;
- the "as-built survey" of the residential property included in the assessor's report;

---

**7.** *See also* Ketchikan Gateway Borough Code § 45.11.106 (1969) ("Appeals [to the superior court] are heard on the record established at the hearing before the board of equalization.").

**8.** 860 P.2d 1248 (Alaska 1993).

**9.** *See Southwest Marine, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 941 P.2d 166, 179–81 (Alaska 1997); *Cool Homes*, 860 P.2d at 1266–67; *Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 798–99 (Alaska 1984); *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974).

**10.** *Oceanview Homeowners Ass'n*, 680 P.2d at 798 (noting that "any matter submitted to an administrative agency involved in an adjudicative proceeding may be included in the record on appeal"); *Interior Paint Co.*, 522 P.2d at 169

(holding that the superior court improperly supplemented the record on appeal from an administrative decision because the superior court "went beyond the evidence which the Board considered and bas[ed] its decision on other parts of the record").

**11.** *See Southwest Marine*, 941 P.2d at 179; *Cool Homes*, 860 P.2d at 1267; *Oceanview Homeowners Ass'n*, 680 P.2d at 798–99.

**12.** Two letters mentioned by Alvarez at the hearing are not in the record: a letter written in 1993 to the assessor, and a June 16, 1995 letter from the assessor to Alvarez. However, these letters are *not* among the documents that Alvarez claims were wrongly excluded.

- an affidavit from Alvarez's tenant describing certain interior features of one of the buildings on Alvarez's property;
- a map of properties in the area of Alvarez's residential property showing other encroachments similar to the one on Alvarez's property.

This is a complete list of all materials considered by or submitted to the Board, as the transcript indicates.[13] All of these materials appear in the record on appeal. Therefore, none of the materials that Alvarez claims were wrongly excluded from the record on appeal were submitted to or considered by the Board. The record on appeal was complete, and the motion to supplement the record was properly denied.

C. *The Board's Failure to Make Sufficient Factual Findings Constitutes Harmless Error.*

■  Alvarez claims that the Board did not make factual findings that are sufficient to enable meaningful judicial review, as required by our decision in *Faulk v. Board of Equalization.*[14] Alvarez asserts that the Board made no findings of fact at all to support its conclusion that the assessor's assessment should be upheld, and that therefore meaningful review of the Board's conclusion is impossible. The Borough claims that *Faulk* is distinguishable, and that in this case the findings made by the Board were. sufficient to enable meaningful review.

The superior court below made sufficient factual findings. The court stated that "[w]ith regard to the vacant land, there is a clearly adequate record." As for the resi-

dential property, the court concluded that "it is relatively clear" from comments made on the record by Board members that the Board "concluded that the assessor had adequately addressed Alvarez's objections and incorporated changes, where necessary, into their valuation."

■  In *Faulk,* we articulated the standard for the sufficiency of factual findings by an administrative board of equalization, stating that "the threshold question" on appeal is "whether the record sufficiently reflects the basis for the [board's] decision so as to enable meaningful judicial review": [15]

> In answering that question, "[t]he test of sufficiency is ... a functional one: do the [board's] findings facilitate this court's review, assist the parties and restrain the [board] within proper bounds?" [16]

We stated that findings will not always be required: "in certain cases, the issues are such that, based on the record, detailed findings are not necessary for this court to understand the agency's reasoning process." [17]

In this appeal, Ketchikan Gateway Borough Code § 45.11.105(9) is also relevant; it states that the Board of Equalization should make its decisions in the form of "motions, with specific findings of fact therefore."

In several earlier decisions, we considered the sufficiency of administrative factual findings, and we concluded that the findings there were not sufficient to enable meaningful review. In five of those cases, the findings were not sufficient because it was impossible for us to determine how the board resolved some crucial dispute or other issue.[18] In two other decisions, we held that

---

13.  At one point during the hearing the assessor discussed the details of features of Alvarez's residential property that do not appear in any documents in the record. It does not appear that in doing so the assessor submitted any materials to the Board. Also, these details do not appear in any materials that Alvarez claims were wrongly excluded.

14.  934 P.2d 750 (Alaska 1997).

15.  *Id.* at 751.

16.  *Id.* (quoting *South Anchorage Concerned Coalition, Inc. v. Coffey,* 862 P.2d 168, 175 (Alaska 1993)).

17.  *Id.* (quoting *Fields v. Kodiak City Council,* 628 P.2d 927, 932 (Alaska 1981)).

18.  *See id.* at 751–52 (findings of board of equalization were not sufficient because board denied property owner's appeal of assessment without any discussion; reviewing court could not determine how the board resolved factual conflicts and inconsistencies in testimony); *Stephens v. ITT/Felec Servs.,* 915 P.2d 620, 627 (Alaska 1996) (findings of workers' compensation board were not sufficient because board did not resolve dispute about whether work conditions could have caused the claimant's injury; testimony on this crucial issue was not mentioned or discussed by the board); *White v. Alaska Commercial Fisheries Entry Comm'n,* 678 P.2d 1319, 1322 (Alaska

the findings of an administrative board were sufficient because it was possible to determine how all crucial disputes and issues were resolved.[19]

The factual circumstances involved in *Faulk* are similar to those in this appeal. In *Faulk*, the property owner (Faulk) owned a condominium complex in Seward that he bought for $495,000.[20] Approximately one month after Faulk purchased the complex, the assessor assessed its value at $1,055,400.[21] Since there were no other condominium complexes in the area, the assessor based the value on comparable sales of townhouses.[22] Before the board of equalization, Faulk claimed that (1) costly repairs that were needed at the complex were undervalued by the assessor, and (2) the comparable properties used by the assessor were not really comparable.[23] The assessor supported its valuation by claiming that Faulk received a "bulk discount" when he bought the entire complex at once, rather than each unit individually.[24] In a written report, the assessor claimed that the alleged bulk discount was between twenty-five and thirty-five percent; however, at the hearing the assessor stated that the discount was between thirty and fifty percent.[25] After the parties made their presentations, the board voted, without any discussion or analysis, to uphold the assessor's valuation.[26] On appeal, we held that the equalization board's findings were insufficient because the board did not address

Faulk's argument that the repair costs were undervalued, did not indicate whether it agreed with the assessor's "bulk discount" theory, and did not resolve the inconsistency between the assessor's written and oral testimony.[27]

As in *Faulk*, this appeal is from a decision of a board of equalization, where the original dispute between the parties concerned the proper valuation of the taxpayer's property. Before the Board, Alvarez claimed that her undeveloped lots should be assessed using the amount of the best offer to buy that Alvarez had received; she claimed that the closure of a local timber mill had a negative impact on property values, making prior comparable sales irrelevant. As for her residential property, Alvarez claimed that the Borough made various factual errors, and that the assessment should have accounted for an encroachment on her lot. The Borough responded to all of these arguments, claiming that Alvarez did not make a reasonable attempt to sell the undeveloped lots, that the mill closure had no effect on undeveloped property values, that factual errors concerning the residential property were corrected, and that the encroachment had no effect because this was true for comparable properties.

Also, as in *Faulk*, the Board below did not make any explicit factual findings. At the close of the discussion period for each of

1984) (findings of fisheries permit board were not sufficient because board gave no reasons at all for denying "points" necessary for permit; reviewing court could not determine whether denial was based on factual or legal judgment); *Fields v. Kodiak City Council*, 628 P.2d 927, 932–34 (Alaska 1981) (findings of board of adjustment were not sufficient because board gave no reasons for denial of zoning variance; reviewing court could not determine whether denial was based on appropriate factors); *Hewing v. Alaska Workmen's Compensation Bd.*, 512 P.2d 896, 898–900 (Alaska 1973) (findings of workers' compensation board were not sufficient because board did not explicitly apply any of the factors required by AS 23.30.190 and .210; reviewing court could not determine if the board applied the proper factors and how it applied them).

**19.** *See Carlson v. Doyon Universal–Ogden Servs.*, 995 P.2d 224, 230 (Alaska 2000) (findings of workers' compensation board were terse, but sufficient because they addressed all crucial issues in the case, and addressed conflicting testi-

mony); *Ayele v. Unisea, Inc.*, 980 P.2d 955, 957–58 (Alaska 1999) (findings of workers' compensation board were sufficient, even though lay witness testimony was not addressed, because lay witness testimony was not potentially material and did not "undermine" employer's expert testimony on which the board relied).

**20.** 934 P.2d at 750.

**21.** *See id.*

**22.** *See id.* at 751.

**23.** *See id.*

**24.** *See id.* at 752.

**25.** *See id.*

**26.** *See id.* at 751.

**27.** *See id.* at 752.

Alvarez's appeals, the Board voted to affirm the assessments for each of the three properties, and no factual findings were issued.

Unlike in *Faulk*, however, the failure here to make any explicit factual findings is harmless. This appeal is distinguishable from *Faulk* because the record indicates that the Board addressed all of the arguments made by the parties, and left no disputes unresolved; it is clear that the Board agreed with all of the borough assessor's arguments and disagreed with those made by Alvarez.

Specifically, the Board addressed all of the arguments raised by the parties in question and answer and discussion periods, conducted after the parties' presentations to the Board. In these periods, the Board addressed the reasonableness of the offer to buy the unimproved lots, the relevance of the comparable sales relied upon by the assessor in light of the mill closure, the alleged factual errors concerning the residential property, and the encroachment on the residential property.

Also, unlike in *Faulk*, where we could "only guess" how the equalization board resolved evidentiary conflicts,[28] it is clear in this case how the conflicting theories were resolved. On the material points of conflict noted above, the Board clearly agreed with the assessor's arguments and disagreed with Alvarez's arguments.[29] No disputes were left unresolved.

We do not condone the Board's failure to make factual findings. Ketchikan Gateway Borough Code § 45.11.105(9) clearly required the Board to issue factual findings, and it should have done so in this case. However, we conclude that this failure was harmless because the record adequately discloses the basis for the Board's decision, and shows how the Board resolved the disputes between the parties.

**D.** *The Superior Court Properly Denied Alvarez's Petition for Rehearing.*

After the superior court ruled against Alvarez on the merits of her dispute on July 23,

1998, Alvarez submitted a motion for rehearing to the superior court, on August 24, 1998. However, on September 6, 1998, the superior court denied Alvarez's motion for rehearing, ruling that it was untimely under Appellate Rule 506. Alvarez appeals this ruling.

■ Appellate Rule 506 controls here because the superior court acted as an intermediate appellate court by reviewing the Board's decision.[30] Appellate Rule 506(b) requires that any petition for rehearing must be filed within ten days after the "date of notice" of the opinion or other decision. The "date of notice" is defined by Alaska Civil Rule 58.1(c)(2) as the "date shown in the clerk's certificate of distribution on the written order."

The problem in this appeal is that the clerk's certificate of distribution on the July 23, 1998 order was undated, and thus failed to specify the "date of notice." Alvarez therefore claims that the ten-day period mandated by Appellate Rule 506(b) never started to run. The Borough argues that this clerical error alone should not be sufficient to excuse the untimely petition, absent actual evidence that distribution was delayed. Instead, the Borough suggests that the date of the July 23, 1998 order be used as the "date of notice," and that therefore the petition for rehearing was due ten days after July 23. The superior court agreed with the Borough, and held that the petition was due "on or about August 3," asserting that the ten-day period began to run on the "date of distribution." The superior court apparently assumed that the date of distribution was on or about July 23.

We need not resolve this dispute, because even if the petition for rehearing were deemed timely, earlier parts of this opinion establish that Alvarez could not prevail on either of the arguments made in her petition for rehearing. In that petition, Alvarez made two arguments: (1) the superior court failed to consider Ketchikan Gateway Borough Code § 45.11.105(9), which required the

---

**28.** 934 P.2d at 752.

**29.** We draw this inference because if the Board had agreed with any of Alvarez's arguments (concerning the offer received, the mill closure, the

factual errors, and the encroachment), then it could not have upheld the assessment.

**30.** *See Childs v. Tulin,* 799 P.2d 1338, 1341 (Alaska 1990).

Board to make factual findings; and (2) material was wrongly excluded from the record on appeal. We have already fully considered both of these issues in this opinion—we held that the motion to supplement the record on appeal was properly denied and that the Board's failure to issue factual findings was harmless error. Therefore, it is irrelevant whether or not the petition for rehearing was timely.

## V. CONCLUSION

Because all materials submitted to or considered by the Ketchikan Gateway Borough Board of Equalization were in the record on appeal, we AFFIRM the superior court's denial of Alvarez's motion to supplement the record. Because the Board's failure to issue findings of fact was harmless, we AFFIRM the tax assessment made by the Ketchikan Gateway Borough. Because Alvarez's petition for rehearing cannot succeed in light of this opinion, we AFFIRM the superior court's denial of that petition.